[No. 34795. *En Banc.* August 25, 1960.]

VIRGIL M. GOODEN *et al., Appellants,* v. HOWARD HUNTER
*et al., Respondents.*[1]

[1]Reported in 355 P. (2d) 20.

*John R. Stair*, for appellants.

*Thomas G. Holcomb*, for respondents.

FINLEY, J.—On April 1, 1954, the plaintiffs, as purchasers, and the defendants, as sellers, executed a written contract for the sale of a commercial fishing boat. The contract contained an express warranty that the boat was "ready to fish," and provided for the payment of the sale price, $12,500, in the following manner: (1) Certain real property, described in the contract and valued by the parties at $7,000, was to be conveyed to the defendants as a "down payment"; (2) the plaintiffs were to pay the remaining $5,500 to the Puget Sound National Bank of Tacoma, holder of a chattel mortgage on the boat. One half of the mortgage obligation was to be paid by October 1, 1954, and the balance was to be paid by October 1, 1955. While characterizing the conveyance of realty as a "down payment," the contract did not specify the time such conveyance was due.

One of the several tracts of land described in the contract, valued by the parties at $1,500, was conveyed to the defendants on the date of execution of the contract. Possession of the boat was delivered to the plaintiffs on April 21, 1954. The boat was then immediately turned over to Richard Quinn, whom the plaintiffs had hired to operate the craft during the summer fishing season. Shortly thereafter, a second tract of land, also valued at $1,500, was conveyed to the defendants. Thereafter, during the summer while Quinn had the boat out fishing, certain difficulties arose between the parties. In August 1954, the defendants notified Quinn that the sale was off. Quinn returned to port about September 18, 1954. On September 23, 1954, the defendants boarded the boat, replaced its lock, and placed a "for sale" sign on it. In short, at that time, the defendants repossessed the boat.

They also resumed the mortgage payments, and finally, during March 1955, they sold the boat to a third party.

In December 1955, the plaintiffs commenced the instant action, seeking: (1) damages for an alleged breach of the express warranty of "readiness to fish" which was contained in the contract of sale; and (2) restitution of the value of the two lots which they had conveyed to the defendants prior to the defendants' repossession of the boat. After a trial on the merits, both causes of action were dismissed; thereupon, plaintiffs appealed.

■ The trial court's dismissal of the cause of action for breach of warranty was based upon a finding of fact to the effect that the certain equipment defects, upon which the appellants relied, in no manner rendered the boat unready to fish. This finding is supported by the record; hence, this aspect of the appeal merits no further consideration. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183, and cases cited therein.

We shall now discuss the questions raised relative to the dismissal of the cause of action for restitution of that portion of the purchase price (reasonable value of real estate conveyed to sellers) which was received by the respondents prior to the time they repossessed the boat. The pertinent findings of fact upon which the trial court denied the appellants' claim for restitution may be summarized as follows: (1) Under the contract of sale, title to the boat at the time of the repossession (in accordance with the respondents' contention that the transaction between the parties was one of conditional sale) was still held by the respondents-vendors; (2) at the time of the repossession, the appellants were in default on the contract; and (3) in any event, no tender was made by the appellants of the benefits derived from having possession and use of the boat during the period between April 21, 1954, and September 23, 1954.

On this appeal the appellants attack the evidentiary basis for the first two of these findings. With respect to the third of the above summarized findings, the appellants contend that no profits were made from the operation of the boat during the period when they had possession, and, hence,

that there simply were no benefits derived from such possession to be tendered to the respondents.

We cannot fully agree with this latter contention, because some benefit accrued to appellants from the mere possession and use of the boat during the 1954 fishing season, despite the fact that no actual financial profit was realized. In other words, benefit to the appellants was properly calculable in terms of the reasonable rental value of the boat for the period in question. *Rummer v. Throop* (1951), 38 Wn. (2d) 624, 231 P. (2d) 313. However, we regard this factor as going to the net amount recoverable by the appellants rather than to the more fundamental question of whether the appellants have a right to recover anything at all. This court has held that the restoration or tender of restoration of benefits is not a condition precedent to the commencement or maintenance of an action for rescission and restitution, but that it is enough that the plaintiff show a willingness to do equity. *Hopper v. Williams* (1947), 27 Wn. (2d) 579, 179 P. (2d) 283. We are satisfied that the appellants' undisputed failure to make a tender of the reasonable rental value of the boat for the period of their possession was motivated by a mistaken belief that benefits are synonymous with actual profits rather than by an unwillingness to do equity.

In considering the more fundamental question of whether the appellants are entitled to any recovery at all, we will accept as verities the findings of the trial court that, at the time the respondents repossessed the boat, (a) title to it was held by the respondents, and (b) the appellants were in default on the purchase contract. Nevertheless, we are convinced that the appellants are entitled to a recovery. An examination of the written contract of sale executed by the parties reveals that it does not contain a forfeiture provision, entitling the sellers, upon repossession of the boat, to retain the previous payments as liquidated damages for the purchasers' breach of contract.

This court has consistently held, in cases involving installment contracts for the sale of *land*, that

"*In the absence of a forfeiture clause*, this court has held in numerous cases that a vendor who rescinds must restore amounts paid on the purchase price, with interest, less such damages as he may have sustained, when the vendee, *although in default*, acquiesces in the rescission. . . ." (Italics ours.) *Tungsten Products, Inc. v. Kimmel* (1940), 5 Wn. (2d) 572, 105 P. (2d) 822, and cases cited therein.

■ But in *Rider v. Cottle* (1949), 32 Wn. (2d) 538, 202 P. (2d) 741, wherein the subject matter of the contract was personalty rather than real property, this court appears to have taken a different view regarding forfeiture of payments made by a purchaser. In *Rider*, as in the instant case, there was (1) a conditional sales contract which contained no forfeiture provision, (2) default by the purchaser, (3) repossession by the seller. In the *Rider* decision the court cited the familiar rule that

". . . where a vendee under a contract of conditional sale without legal cause abandons the property contracted to be sold and fails to make the payments of the purchase price as they become due, . . . the vendor may take all reasonable steps to protect the property interest which he retains by virtue of his reservation of title pending payment of the purchase price, and may take possession of such property without recourse to the courts if he can do so peaceably, *and no forfeiture clause or contractual stipulation to that effect is necessary as a part of the contract.* . . ." (Italics ours.)

Then, based upon the proposition that a forfeiture provision is unnecessary as a prerequisite to the existence of a right in the seller to retake possession, the court, without any further showing of reasons, allowed the repossessing vendor to retain so much of the purchase price as he had received prior to the time of repossession. We entertain serious doubts as to the soundness of this result. The logic in the right of a conditional seller of personalty to repossess the goods upon default by the buyer can hardly be disputed. However, such a right is not inconsistent with a co-existent duty on the part of the repossessing seller to account for the amount previously paid on the purchase price, less (a) any actual damages the seller may have sustained, and (b)

the reasonable value of the use of the property.[2] *Quality Clothes Shop v. Keeney* (1914), 57 Ind. App. 500, 106 N. E. 541. The function of a contract of sale (whether of land or of personalty) under which title is retained by the seller until the purchase price has been paid is to secure the seller for payment of the purchase money. We are convinced that such a contract should not be construed in a manner to give the seller both the property and the money received for it, unless the contract of sale expressly provides for the forfeiture of payments made by the purchaser. Obviously, if the conditional seller desires the additional protection which a right of forfeiture affords him, this may be accomplished simply by including in the contract an express provision to that effect.

*Rider v. Cottle, supra,* is therefore overruled.

■ By their pleadings, the respondents in the instant case also raised the doctrine of laches as an affirmative defense to the appellants' claim for rescission and restitution. Because the trial court disposed of the case adversely to the appellants on the grounds above discussed, the court made no ruling on this issue. In any event, we are satisfied that this is not a proper case for invocation of the laches doctrine.

In *Luellen v. Aberdeen* (1944), 20 Wn. (2d) 594, 148 P. (2d) 849, this court commented:

"The doctrine of laches is a creature of equity and is grounded upon the principles of equitable estoppel. It does not bar an action short of the statute of limitations applicable thereto, unless it is made to appear that, by reason of the delay in asserting a claim, the other party has altered his position or has been otherwise injured by the delay."

Our examination of the record discloses that the respondents neither pleaded nor proved any detrimental change of position or other injury occasioned by the appellants' delay in bringing suit.

The conclusions we have reached in this opinion require that the trial court's dismissal of the appellants' cause of

---

[2]In the instant case it is to be noted that the respondents-sellers have at no time claimed any actual damage resulting from the appellants' default.

action for breach of warranty be affirmed. However, the judgment dismissing the cause of action for restitution of contract payments made before repossession of the boat must be reversed, and the cause remanded for a determination of the net amount of recovery to which the appellants are entitled after respondents have been credited with the reasonable rental value of the boat for the period during which the appellants had the use and possession thereof.

Both of the parties hereto, appellants and respondents, shall bear their own costs on this appeal.

It is so ordered.

ALL CONCUR.

