[No. 372-41330-1. Division One—Panel 2. January 11, 1971.]

W. BRADFORD HARRISON *et al., Respondents,* v. GEORGE PUGA *et al., Appellants.*

54

*Robinson, Landerholm, Memovich, Lansverk, Whitesides & Marsh* and *Dale V. Whitesides,* for appellants.

*John Ranquet,* for respondents.

Horowitz, A. C. J.—Plaintiffs Harrison and Davis recovered a joint judgment against the defendants individually and as a marital community in the sum of $16,000 for monies advanced or paid. Defendant George Puga, hereinafter referred to as defendant, and his wife, appeal. Defendants make no attempt to distinquish between themselves on the question of liability nor do they otherwise

complain of the form of the judgment. Accordingly, we likewise do not differentiate between them nor do we pass on the form of the judgment.

The evidence supports the following statement of the case. Prior to March 29, 1967, plaintiffs resided in Seattle, Washington and defendants resided in Portland, Oregon. They met in Seattle. While there, they orally agreed to go into a cable television business together in the Portland, Oregon area. In that connection, they discussed the purchase of defendant's Happy Valley Cable Television System in Clackamas County, Oregon, the system being worth about $10,000. Plaintiff paid defendant George Puga $200 for an option to purchase it.

The parties next met in Portland, Oregon for further discussions. They contemplated that 100 per cent outside financing would be sought by plaintiffs to finance the acquisition of a new cable television system. Each party would then have an equal share of that part of the ownership not taken by the person supplying the financing. The parties then orally agreed to invest $500 each by way of stock subscriptions in the corporation to be formed. To pay the $1,000 investment required of them, plaintiffs paid an additional $800. This sum, together with the $200 theretofore paid, make up the agreed capital stock investment.

About March 27, 1967, defendants' attorney in Portland prepared a written contract (hereafter referred to as contract) embodying their understanding and mailed it to the plaintiffs in Seattle, Washington for signature. After the plaintiffs signed the contract in Seattle, they mailed it back to Portland where it was signed by the defendant.

The contract names the defendant and each plaintiff as parties. The recitals in the contract state the relationships and thinking of the parties. Paragraph one recites that Harrison and Davis are desirous of entering into the cable television business in Portland, Oregon; that Puga is the owner and operator of a cable television system in the Happy Valley area of Portland. Paragraph two states that Harrison and Davis desire to form an Oregon corporation to

engage in the cable television business and desire to acquire the Happy Valley Cable Television System for said corporation and secure the personal services of Puga as senior manager for the corporation. Paragraph three states that the parties recognize the necessity of obtaining financing and that it may be necessary to sell a controlling interest in the corporation to be formed.

Paragraph four of the contract contains the provisions of particular interest in the instant case. It provides in part:

To accomplish this purpose the parties agree as follows:

A. Puga agrees that if before June 29, 1967, the following conditions are met, he will transfer all his right, title and interest in and to his Happy Valley Cable T. V. system to the corporation to be formed:

CONDITIONS

1. He has been paid the sum of $20,000.00.
2. The corporation to be formed has been formed in the manner later set forth herein.
3. The corporation to be formed has executed a contract with him to employ him for a period of 5 years as set forth later herein.

B. Harrison and Davis agree:

1. To advance the expense, including legal fees, of the formation of the corporation.
2. To forthwith execute and file Articles of Incorporation for Cascade Cablevision Inc. an Oregon corp.

. . .

D. The parties agree to use their best efforts to obtain a franchise for a cable television system from the City of Portland for the East Portland area.

The contract contains other provisions describing the nature of the corporation to be formed, providing for equal $500 stock subscriptions and describing the nature of the defendant's employment contract to be entered into. The contract neither contains a clause making time of the essence nor a clause providing for forfeiture.

Promptly after the contract was signed, Cascade Cablevision, Inc. was formed with the defendant as president and general manager and with the plaintiffs as the other officers. The corporation by written contract employed the defendant at a monthly salary of $1,000 and entered into

other financial commitments. Defendant undertook his duties as general manager on April 1, 1967. Between April 27, 1967 and September 28, 1967, the corporation paid the defendant a total salary of $6,000, reimbursed him for his automobile expenses for several trips to Seattle, and paid other corporate expenses for defendant's mail and telephone calls to Seattle. The sole, or virtually the sole, monies obtained by the corporation came from payments made by the plaintiffs.

Plaintiffs sought to obtain the 100 per cent financing contemplated. Pending the receipt of that financing, defendant and Cascade Cablevision, Inc. wanted money. In addition to the $1,000 earlier paid into the corporation, plaintiffs, between April 3, 1967 and August, 1967 and at defendant's request, paid or advanced $15,000. Of the $16,000, plaintiff Harrison paid or advanced $12,700 and plaintiff Davis paid or advanced $3,300. The advances to Cascade Cablevision, Inc., made at defendant's request, consisted of an advance of $5,000 on April 3, 1967 and $2,500 in August, 1967. The payment to the defendant consisted of two payments, one on May 27, 1967 in the sum of $5,000 and one on July 30, 1967 in the sum of $2,500. Defendant retained the sums paid to him. The corporation subsequently expended the total sums paid to it, by way of salary to the defendant, acquisition of certain corporate assets and expenses.

Shortly after formation, Cascade Cablevision, Inc., in its own name, acquired certain assets needful in the enterprise. In addition, defendant, on or about April 10, 1967, in the performance of his duties for the corporation, but in his own name, acquired a necessary and valuable franchise to install a cable television system in the eastern half of Multnomah County, Oregon. About September 8, 1967 defendant, again in his own name, obtained a necessary and valuable pole attachment agreement for use in connection with the cable television system authorized by the franchise. The value of the franchise and pole attachment agreement was $50,000. Defendant mailed copies of the franchise and

pole attachment agreement and maps to the plaintiffs in Seattle. Defendant explained that the franchise and pole attachment agreement were taken in his own name as a matter of convenience because Cascade Cablevision, Inc. was insolvent. Meanwhile, plaintiffs were continuing their efforts to obtain the 100 per cent outside financing contemplated. In July, 1967, plaintiffs introduced defendant to a company known as H & B American as a possible source of future financing. As later shown, that company, sometime after December 13, 1967, supplied the defendant with the financing needed.

It began to be evident as early as October, 1967, that plaintiffs, despite their continuing efforts to do so, were apparently unable to obtain the financing contemplated. By December, 1967, after fruitless meetings in Seattle and Portland, this inability to obtain financing continued. Plaintiffs, however, had not abandoned their efforts. The court impliedly declined to credit defendant's testimony that in December, 1967, plaintiff Harrison notified defendant that plaintiffs could not exercise their "option" and that defendant should act to preserve his own interest as best he could.

Meanwhile, defendant had made other contacts for outside financing. On December 13, 1967, defendant mailed a letter to the plaintiffs in Seattle, notifying them that the contract between the parties was terminated and that the defendant was no longer under any obligation to the plaintiffs. Defendant had not theretofore sent or given notice to the plaintiffs setting forth this position or giving plaintiffs an opportunity to finally comply with the condition as to payment described in paragraph four A of the contract.

Thereafter, defendant treated all of Cascade Cablevision, Inc.'s assets as his own. He formed a new corporation, Radiant Cable Systems, Inc., to which he transferred Cascade Cablevision, Inc.'s assets, including the franchise and pole attachment agreement theretofore held in defendant's own name. In February, 1968, defendant caused Radiant Cable Systems, Inc. to be merged with another corporation in which H & B American—the company to which plain-

tiffs had introduced defendant—obtained an interest. Defendant ultimately received the sum of $45,000 in cash plus 20 per cent of the outstanding stock in Radiant Cable Systems, Inc., together with a monthly employment agreement for the assets received and his Happy Valley Cable System.

Plaintiffs treated defendant's letter of December 13, 1967 as a breach of contract, and made demand upon defendants to repay the $16,000 above described. Upon defendants' refusal to comply, this litigation followed.

Defendants' 16 assignments of error fall into three categories: the sufficiency of the evidence to support the findings; the sufficiency of the findings to support the conclusions concerning defendants' liability; and the sufficiency of the evidence to show jurisdiction of the court below to render the judgment appealed from. We have examined the record and find substantial evidence to support at least the critical findings of fact which we accordingly accept. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). We turn to defendant's remaining contentions.

■■ Defendant contends that the contract is merely an option agreement which, by virtue of paragraph four of the contract, terminated on June 20, 1967. He contends that payments thereafter made were for extensions of time for the exercise of the option and, upon the nonexercise of the option by the time the extension period expired, there was no longer any right to recover any part of the amounts paid. We do not agree. An option agreement for the purchase of property is an agreement supported by consideration, embodying a continuing offer open for acceptance during a fixed period of time. Until exercised, the option creates no obligation to pay or perform in accordance with the option terms. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968); 17 Am. Jur. 2d *Contracts* §§ 32, 88 (1964). It is true that if the optionee does not timely exercise the option in accordance with its terms, the option terminates and, unless the option provides otherwise, the optionor cannot recover the option price paid. On

the other hand, a contract to purchase is a valid contract even though one or more promises are conditional in character. *See e.g., Olsen v. Northern S.S. Co.,* 70 Wash. 493, 127 P. 112 (1912); *Corinthian Corp. v. White & Bollard, Inc., supra.* In the instant case, paragraph four A created a conditional promise by defendant to transfer his Happy Valley Cable Television System to a corporation to be formed. By paragraph four B, plaintiffs agreed to advance certain expenses in the formation of the corporation and to forthwith execute and file articles of incorporation for Cascade Cablevision, Inc., an Oregon corporation. Paragraph four D required the parties "to use their best efforts to obtain a franchise for a cable television system from the City of Portland for the East Portland area." Paragraphs four B and D contemplated immediate performance by the plaintiffs pending the time when, under paragraph four A, defendant's conditional obligation would become performable. The provisions summarized were sufficient to create contractual obligations.

However, whether or not paragraph four A creates an option is not necessarily determinative of the question of whether the contract was breached. Even an option agreement may be breached. If the performance of a condition precedent to liability, whether or not contained in an option or other contract, is made impossible by a premature notice of forfeiture, the innocent party is entitled to remedies for breach of contract. *Highlands Plaza, Inc. v. Viking Inv. Corp.,* 72 Wn.2d 865, 435 P.2d 669 (1967). *See* Restatement of Contracts § 295 (1932). The remedy for breach may consist of restitution of payments made. *See Golob v. George S. May Int'l Co.,* 2 Wn. App. 499, 468 P.2d 707 (1970); 17 Am. Jur. 2d *Contracts* § 445 (1964). Moreover, there was evidence from which the court below could reasonably infer that the $16,000 paid or advanced was to be considered in partial fulfillment of the $20,000 conditional obligation described in paragraph four A and that no part of said sum was paid for any option or option extension.

Plaintiffs support the judgment below on the theory of restitution for breach of contract. The breach complained of is defendant's letter of December 13, 1967, terminating the contract without prior notice. Plaintiffs claim they never abandoned their efforts to obtain 100 per cent financing even though their efforts were unsuccessful; that defendant waived the June 20, 1967 deadline on payment requirements by requesting and accepting payments from plaintiffs after June 20, 1967; that in the absence of a clause making time of the essence or providing for forfeiture, defendant could not legally forfeit the contract without prior notice giving plaintiffs a reasonable opportunity to perform; and that the failure to give such a notice is a breach of contract. We agree with these contentions.

When a contract payee accepts late payments without objection as to their timeliness, he impliedly leads the payor to believe that late payments will be accepted and thus waives the time for payment condition specified in the contract. *See* Annot., 157 A.L.R. 1311 (1945); *Mathews v. Heiser*, 42 Wn.2d 326, 255 P.2d 366 (1953). Accordingly, a contract payee cannot by his ex parte act and without prior reasonable notice to the payor enforce due date provisions in the contract so as to claim a forfeiture. This is all the more true when the contract neither contains a clause making time of the essence nor a clause providing for forfeiture in the event of breach. *See Gooden v. Hunter*, 56 Wn.2d 617, 355 P.2d 20 (1960); *Radach v. Prior*, 48 Wn.2d 901, 297 P.2d 605 (1956); *Whiting v. Doughton*, 31 Wash. 327, 71 P. 1026 (1903); Restatement of Contracts § 311 (1932); 3A A. Corbin, Contracts § 755 (1960).

Defendant next contends that if liability exists, defendants are neither personally liable for the initial $1,000 paid nor the $7,500 advanced to Cascade Cablevision, Inc. We do not agree. The contract is with the defendant personally and breach of that contract is the defendant's breach in his individual capacity. The money advanced by plaintiffs to Cascade Cablevision, Inc. was advanced because paragraph four A of the contract contemplated a

payment of $20,000 in order to render defendant's promise performable. It is true that the court made no express finding on the question of whether the sums totaling $8,500 were part of the $20,000 payment condition called for in paragraph four A. Nevertheless the court could have found, and we are of the opinion that the court impliedly found, that the initial $1,000 was paid pursuant to the requirements of the contract and that $7,500 was paid as part of the $20,000 described in paragraph four A. So far as the contract was concerned, credit for the $7,500 was actually extended to the defendant for his account rather than extended to the insolvent corporation alone. Accordingly, the payments so made or advanced to the corporation, all at the defendant's request, did not extinguish defendant's personal obligation to repay the money under principles of restitution. *See Golob v. George S. May Int'l Co., supra.*

The judgment for restitution for the sum of $8,500 is alternatively supportable if we accept plaintiffs' contention that this case is a proper one for applying the doctrine of disregarding the entity of Cascade Cablevision, Inc.. When a person deals with a corporation, he normally must enforce his rights and the corporation's corresponding duties against the corporation itself as a separate entity. He thereby regards the corporation as a separate legal person. *Critzer v. Oban,* 52 Wn.2d 446, 326 P.2d 53 (1958). There are exceptional situations when it is nevertheless proper to disregard the separate entity of the corporation and fasten liability directly on the corporation's stockholder and in favor of the person dealing with the corporation. By so doing, the court in effect extends the scope of the duty initially owed by the corporation to the person dealing with it so as to impose liability upon the corporation's stockholder in his individual capacity. *J. I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 392 P.2d 215 (1964). The court must do so, however, for an adequate reason. Often the reason given is public advantage, requirements of justice, alter ego, fraud, bad faith, or other wrong. Such cases often mean nothing more than that the violation of duty will

result if the entity is not disregarded. Two phases of the doctrine are relevant in the instant case. First, when the corporate stockholder himself by his overt acts in dealing with the corporation disregards the separate entity of the corporation to the prejudice of such third person, he can scarcely complain if the court judges him by his conduct and likewise disregards the corporate entity in order to enforce the right owed to the person dealing with that corporation. This rule cannot be applied to the prejudice of innocent third persons. The fact patterns vary. However, among many cases that are explainable as supporting the foregoing principles are: *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 418 P.2d 443 (1966); *Garvin v. Matthews*, 193 Wash. 152, 74 P.2d 990 (1938); *Allman Hubble Tugboat Co. v. Reliance Dev. Corp.*, 193 Wash. 234, 74 P.2d 985 (1938); *Deno v. Standard Furn. Co.*, 190 Wash. 1, 66 P.2d 1158 (1937); *State v. Davies*, 176 Wash. 100, 28 P.2d 322 (1934); *Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 19 P.2d 940 (1933); *Platt v. Bradner Co.*, 131 Wash. 573, 230 P. 633 (1924). *Cf. Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 463 P.2d 622 (1970). Second, when only the rights of plaintiff and defendant are to be determined, there being no innocent third party rights involved, then, notwithstanding that plaintiff's rights are initially against a corporation, the corporate entity may likewise be disregarded as a matter of convenience, *e.g.*, to avoid circuitous action. Whether or not the defendant's overt intent was to disregard the corporate entity may be, but is not necessarily involved. Although here also the fact patterns vary, the following cases are illustrative of the second principle, *Komow v. Simplex Cloth-Cutting Mach. Co.*, 109 Misc. 358, 179 N.Y.S. 682 (Sup. Ct. 1919); *aff'd* 191 App. Div. 884, 180 N.Y.S. 942 (1920); *W. G. Platts, Inc. v. Platts*, 49 Wn.2d 203, 298 P.2d 1107 (1956); *Ekstrom v. D. Dierssen, Inc.*, 180 Wash. 493, 40 P.2d 138 (1935); *Sheffield Co. v. R. Hoe & Co.*, 173 Wash. 489, 23 P.2d 876 (1933); *see also, Roberts v. Hilton Land Co.*, 45 Wash. 464, 88 P. 946 (1907). Annot., 34 A.L.R. 597, § VI (1925); Annot., 1 A.L.R. 610, § VI (1919);

1 W. Fletcher, Cyclopedia of The Law of Private Corporations § 46 (perm. ed. rev. vol. M. Wolf 1963).

In the instant case, defendant's overt intention to disregard the entity of Cascade Cablevision, Inc. is evidenced by the fact that he stripped the corporation of all of its assets and took substantial assets in his own name for which he refuses to account to the corporation. He could scarcely have disregarded the corporation more. Hence, the first rule applies. The second rule likewise applies because if we do not disregard the corporate entity of Cascade Cablevision, Inc., plaintiffs will be compelled to obtain judgment against Cascade Cablevision, Inc., an insolvent corporation, and then obtain a receiver for the corporation to collect its corporate assets including the franchise and pole attachment agreement taken in defendant's name. RCW 7.60.020. The receiver would then require the defendant to pay what he owes to the corporation so that the plaintiffs can be paid. This circuitous and more expensive remedy may be obviated since no innocent third party rights are involved. By disregarding the entity of the corporation, we may award judgment directly against the defendant. *Knight v. Burns,* 22 Ohio App. 482, 154 N.E. 345 (1926). At the same time we will thereby be enforcing plaintiffs' rights under the contract of March 27, 1967 and providing a restitution remedy in their favor against defendant for unjust enrichment.

Defendants next contend that the judgment in favor of plaintiffs should not be a joint judgment but a several judgment in the amount of the respective sums paid by each plaintiff. We do not agree. The contract recitals state that "Harrison & Davis" are desirous of entering into a cable television business in the Portland, Oregon market; that "Harrison & Davis" desire "to form an Oregon corporation . . ." and "secure the personal services of Puga . . . for said corporation." In the operative portion, paragraph four B states "Harrison and Davis agree." Defendant's letter notice of December 13, 1967 treated the obligations of plaintiffs as joint. It treated both plaintiffs as in default without attempt at segregation even though

plaintiff Harrison had paid more than his half share of the $20,000. In 2 Williston, Contracts § 316, at 541 (3d ed. Jaeger 1959) it is stated:

> At common law, a joint contract is an agreement by all of the promisors that the act promised shall be done. It is treated as the single obligation of all jointly and the individual obligation of none. For any breach of the contract, there is but one cause of action and the joint obligors are jointly liable for the damages suffered by the obligee.

(Footnotes omitted.) *See also* 2 Williston, Contracts § 320 (3d ed. Jaeger 1959); 4 A. Corbin, Contracts § 925 (1951); 17 Am. Jur. 2d *Contracts* § 300 (1964). In our opinion, the obligations of and to the plaintiffs under paragraph four A of the contract were intended to be joint rather than a several obligation for a single performance *i.e.,* payment of $20,000.

Defendants are not prejudiced by this ruling on joint liability. They will be protected against being compelled to pay twice; credit will be received on the joint judgment for amounts paid. When the judgment for $16,000 has been paid, defendants will have discharged their obligation to the plaintiffs leaving to the latter the adjustment of their respective rights in the sums paid. Defendants are not concerned with that adjustment. *See* 4 A. Corbin, Contracts § 928 (1951); *Alpaugh v. Wood,* 53 N.J.L. 638, 23 A. 261 (1891); *Woelfel v. Tyng,* 221 Md. 539, 158 A.2d 311 (1960).

Defendants finally contend that the trial court erred in overruling their motion to dismiss the instant case for want of jurisdiction. RCW 4.28.185 confers jurisdiction on a Washington court to entertain an action against a nonresident when he transacts any business in this state.[1] Defend-

---

[1] RCW 4.28.185 provides in part: "(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state; . . ."

ant contends his contacts with the state of Washington with respect to the business here involved were insufficient to show that he transacted "any business within this state."

 Washington's long arm statute, subject only to constitutional limitations, should be liberally applied to obviate the mischief intended to be remedied by the statute. A Washington citizen should not be unnecessarily compelled to pursue his remedy elsewhere against a nonresident defendant, who having transacted the business involved in this state, is no longer present therein. The touchstone of constitutional validity of RCW 4.28.185 is whether defendant's contacts in Washington in the transaction of the business involved are sufficiently substantial to show that he has undertaken "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). If the purposeful activity test is not met, the long arm statute cannot be constitutionally applied. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). It is recognized that the transaction of particular business may involve contacts in more than one state. However, the rule requirements are met in the state in which suit is brought if there be sufficient substantial contacts in that state to meet the purposeful activity test even though there are also contacts elsewhere.

 In the instant case, substantial negotiations preceding the execution of the contract took place, partly in Washington. Later the written contract was signed by the plaintiffs in Seattle after being sent by the defendant for that purpose. The payments sought to be recovered for the most part were made by plaintiffs in or from Seattle. The requests for the payments made by the defendant were either made in or transmitted to the plaintiffs in Seattle. The defendant's performance of the contract involved more than the use of telephone and mail facilities between Port-

land and Seattle; it entailed several trips to Seattle as well. The letter notice of December 13, 1967 was mailed to and was intended to become effective upon receipt in Seattle and was necessarily intended to give rise to rights under Washington law in Washington, believed by the defendant to be favorable to him. All in all, defendant from the beginning evidenced an intention to undertake substantial purposeful activity in the state of Washington in negotiating for, entering into, carrying out and terminating the contract involved utilizing Washington law for that purpose. *Hanson v. Denckla, supra; Griffiths & Sprague Stev. Co. v. Bayly, Martin, & Fay, Inc.,* 71 Wn.2d 679, 430 P.2d 600 (1967), noted, 43 Wash. L. Rev. 833 (1968); *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967), noted, 44 Wash. L. Rev. 490 (1969). The fact that the claim for relief for breach of duty owed arose in Washington (Restatement of Conflict of Laws § 453 (1934)) is not of course controlling on the question of whether Washington has jurisdiction to dispose of the claim for relief asserted. Nevertheless, the fact that a Washington claim for relief is asserted based on substantial purposeful Washington acts of defendant, supports the view that defendant's prior conduct constituted "the transaction of . . . business within this state." RCW 4.28.185. In our opinion the assumption of personal jurisdiction over defendants does not offend " 'traditional notions of fair play and substantial justice' within the contemplation of the due process clause." *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 882, 425 P.2d 647 (1967). We find no error.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.