[No. 6108–44456–1. Division One. March 5, 1979.]

GLENN M. MORGAN, ET AL, *Appellants,* v. HORACE E. BURKS, ET AL, *Respondents.*

*Reed, McClure, Moceri & Thonn, P.S.,* by *Ron J. Perey* and *William R. Hickman,* for appellants.

*Merrick, Hofstedt & Lindsey, H. J. Merrick, Thomas V. Harris,* and *Stanley G. Williams,* for respondents.

SWANSON, J.—On November 28, 1971, Horace Burks shot Glenn M. Morgan, rendering him a quadriplegic. Bifurcation of the ensuing civil cause of action resulted in two distinct judgments: a jury verdict in the amount of $2,350,000 against Horace Burks and Harlow–Burks, Inc., his employer, and a nonjury trial court judgment holding Harlow–Burks, Inc., to be a proper corporate entity. Morgan appeals the second judgment, contending the "corporate veil" of Harlow–Burks, Inc., should have been "pierced" and shareholders Bessie Burks and Henry Harlow held personally liable.

Because the trial court erroneously ignored evidence of corporate activity which occurred after the shooting, we reverse and remand for factual determinations consistent with the standards described herein.

Harlow–Burks, Inc., is a closely held corporation of which Horace Burks, Bessie Burks (mother of Horace Burks) and Henry Harlow (uncle of Horace Burks) are the sole shareholders. At trial to "pierce the corporate veil," Morgan presented evidence of shareholder activity *predating* the shooting incident which, he argued, justified assessing individual liability against Bessie Burks and Henry Harlow. The trial court disagreed. No error is assigned to that narrow decision. Thus, the question whether *preshooting* corporate and shareholder behavior *alone* demonstrated a disregard of the corporate entity is not before us.[1]

Morgan also presented evidence of postshooting activity at trial. Testimony and exhibits established that on October 18, 1972, Horace Burks, as president of the corporation, issued corporate promissory notes to Bessie Burks and Henry Harlow in the sum total of $96,000 secured by a mortgage on corporate property. Just prior to the personal injury trial occasioned by the shooting, on August 23, 1975, Horace Burks issued further notes and mortgages in the amount of $15,000 each to Bessie Burks and Henry Harlow. None of the transfers was accompanied by recorded consideration.

Morgan argues these conveyances constituted a deliberate gutting of corporate assets to protect the corporation and shareholders from expected corporate liability and, as such, were additional grounds for finding Bessie Burks and Henry Harlow individually liable for the judgment against the corporation. The trial court, however, held post–tort corporate activity irrelevant and ignored the conveyances while holding the corporation to be a proper entity. This

---

[1]Although Morgan employs the metaphor "piercing the corporate veil" in his arguments, we believe the generic term "disregarding the corporate entity" the more appropriate.

exclusion of the postshooting conveyances from the decision–making process below provides Morgan's major grounds for appeal.

Pending this appeal, Harlow–Burks, Inc., filed bankruptcy in the United States District Court for the Western District of Washington at Seattle, under Bankruptcy Cause No. B75–1456S. The judgment, memorandum decision, and findings of fact and conclusions of law of the bankruptcy court are part of the record before us.[2] That court specifically held the postshooting conveyances described above to be fraudulent conveyances and declared each and all null and void.

Thus, the issue before us may be posed as follows: Are post–tort fraudulent conveyances, even if voided in separate litigation, to be considered in an action to disregard a corporate entity? Because such an action turns on the intent of the participant shareholders, we answer in the affirmative.

▇ Initially, we note the general accord of commentators, case law, and statutes that

the corporation is an entity distinct from the shareholders or members and with rights and liabilities not the same as theirs individually and severally, and the corporation and its officers are not the same personality.

1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 25, at 99 (perm. ed. rev. repl. 1974). Equal accord exists, however, for the proposition that the corporate entity will be disregarded and personal liability imposed "when necessary to do justice." *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 411, 418 P.2d 443 (1966), *quoting Superior Portland Cement, Inc. v. Pacific Coast Cement Co.*, 33 Wn.2d 169, 212, 205 P.2d 597 (1949). *See* 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 41, at 166 (."practically all authorities agree that

---

[2] The described proceedings in the bankruptcy court were made a part of this record at the request of the respondents and pursuant to direction of the Supreme Court.

under some circumstances in a particular case the corporation . . . should be disregarded *in the interest of justice* in such cases as fraud. . . ." (Italics ours)); 18 Am. Jur. 2d *Corporations* § 14 (1965) ("in an appropriate case and *in furtherance of the ends of justice,* a corporation and the individual or individuals owning all its stock and assets will be treated as identical." (Italics ours. Footnotes omitted.))

■ In the instant situation, the trial court's decision to ignore postshooting corporate activity appears based upon a perceived distinction between the effect of post–tort activity on the satisfaction of a judgment, as opposed to the question of liability. Thus, the trial judge, finding no pre-tort relationship between tort–feasor and victim, held that post–tort conveyances which affected only subsequent satisfaction of judgment, but not underlying liability, were irrelevant *to* allegations *of* abuse of the corporate mantle. With this we cannot agree.

In a fact pattern analogous to that before us, a corporate officer, aware that the corporation would soon be found liable in tort, stripped it of its assets in an effort to make the corporation judgment–proof. The court disregarded the corporate entity, noting:

> [I]t is abundantly clear that following the accident, Thoni utilized his position of dominance and control over the corporation for the fraudulent purpose of depriving appellees of their rightful recovery.

*Thoni Trucking Co. v. Foster,* 243 F.2d 570, 571 (6th Cir. 1957). *See also* H. Henn, *Corporations* § 151, at 268 (1970). Use of a corporate entity to "protect fraud" has been defined consistently by commentators as reason to disregard same and "regard the corporation as an association of persons." 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 41. *See also* Horowitz, *Disregarding the Entity of Private Corporations,* 14 Wash. L. Rev. 285, 294 (1939), 15 Wash. L. Rev. 1 (1940); F. O'Neal, *Close Corporations* § 1.09a, at 33 (2d ed. 1971). Thus, this court in *Soderberg Advertising, Inc. v. Kent–Moore Corp.,* 11 Wn. App. 721, 732, 524 P.2d 1355 (1974), averred:

In exceptional cases, however, when the natural or artificial person sought to be held has so conducted himself or itself with respect to the person seeking relief that not to enforce the remedy for breach against that person would aid in the perpetration of a wrong as, for example, accomplishing a fraud, the corporate entity will be disregarded to prevent such a result.

Finally, in a contractual context, this court in *Harrison v. Puga,* 4 Wn. App. 52, 64, 480 P.2d 247, 46 A.L.R.3d 415 (1971), held a corporate officer could not claim sanctuary within the corporate entity where "he stripped the corporation of all of its assets and took substantial assets in his own name. . . ." As we then concluded, "He could scarcely have disregarded the corporation more." *Harrison,* at 64. *See also* Annot., 46 A.L.R.3d 428, § 6 (1972).

■ Thus, the trial court erred in ignoring the post-shooting conveyances as such related directly to the regard, or lack thereof, of the shareholders for the separate nature of the corporate entity. Nor can the fact that the corporation may have been made whole by later bankruptcy proceedings lessen the relevance of post–tort activity as to the question of disregarding the corporate entity. Disposition of such a question turns on the overt intent manifested by shareholders towards the separate character of the corporation. A test devised by now Justice Charles Horowitz delineates the importance of the element of intent:

1. *(a)* If there is an overt intention to regard or disregard the corporate entity, effect will be given thereto unless so to do will violate a duty owing.

*(b)* The overt intention is that of the corporation whose entity is sought to be disregarded or of the person or persons owning its stock and sought to be visited with the consequence of regard or disregard of the corporate entity.

*(c)* The duty owing must be owing to the person seeking to invoke the doctrine, and such duty may arise from common law and equity, contract or statute.

Horowitz, *Disregarding the Entity of Private Corporations,* 15 Wash. L. Rev. 1, 11 (1940).

774

Thus, on remand, the potential personal liability of Bessie Burks and/or Henry Harlow should be determined equitably in light of the respective overt intent of each to regard or disregard the corporate entity, after evaluation of the cumulative evidence of pre- and post-tort corporate and shareholder behavior.

Reversed and remanded for factual determination consistent herewith.

JAMES and RINGOLD, JJ., concur.

Reconsideration denied June 4, 1979.

Review granted by Supreme Court September 7, 1979.