William J. WARREN and Warren & Warren, Inc., Plaintiffs Below, Appellants,

v.

Edward J. WARREN and Evelyn M. Warren, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: April 11, 1983.

Decided: May 2, 1983.

Arthur J. Sullivan (argued), Wilmington, for appellants.

A. Gary Wilson (argued), Wilmington, for appellees.

Before HERRMANN, C.J., McNEILLY and CHRISTIE, JJ.

CHRISTIE, Justice:

In 1966 Edward Warren and his stepbrother, William Warren, formed a Delaware corporation known as Warren & Warren, Inc. The apparent purpose of the corporation was to hold and develop real estate investments. Ever since the corporation was formed, William has served as president, Edward as vice president and Edward's wife, Evelyn, as treasurer. However, corporate formalities were largely ignored. For example, stock certificates were never issued and no meetings of shareholders or directors took place until 1976. Several properties were, in fact, purchased in the corporate name and among the properties acquired was a double house at 1509–1511 Delaware Avenue in Wilmington. It is the transfer of this property from the corporation to Edward and Evelyn which gives rise to this litigation.

In 1976 Edward told William that he wished to purchase the Delaware Avenue property in order to provide security for his mother, who resided in an apartment in the building. William agreed to the sale of 1511 Delaware Avenue to Edward for a figure $5,000 below the then undetermined market price. Thereafter, Edward secured an appraisal of $35,000 to $40,000 for the entire property. The Vice Chancellor found that $40,000 reflected the value of the property in 1976. Edward and Evelyn, acting as corporate officers and in the name of the corporation, conveyed the entire double house to themselves as individuals for a consideration of $30,000.

There was no directors meeting or shareholders meeting regarding the conveyance, and William was never notified in writing

that the transaction had been completed. The Vice Chancellor found that William did not become aware that both parts of the property had been conveyed until 1979. In 1980 William brought a derivative suit in the Court of Chancery alleging that the purchase price was inadequate and that Edward and Evelyn had breached their fiduciary duty to the corporation. He sought rescission of the conveyance and an accounting.

The Vice Chancellor found that the price was inadequate but declined to order a rescission of the transaction. Instead he ordered Edward and Evelyn to pay to the corporation the difference between their purchase price and the 1976 market value of the property (less the $5,000 discount Edward had agreed to) plus legal interest. However, this payment was subject to the condition precedent that William first repay the $8,400 of corporate funds which he had "appropriated to his own use".

On appeal William argues that the Vice Chancellor erred as a matter of law in ordering a recoupment of $5,000 by the corporation as the only major remedy for the wrong. He contends that the general rule is that a transaction such as this sale by the corporation to its officers for less than adequate consideration is voidable at the option of the corporation. 19 Am. Jur.2d *Corporations* §§ 1291, 1304 (1965); Annot., 24 A.L.R.2d 71 (1952); 3 Fletcher, *Cyclopedia of the Law of Private Corporations* § 924 (perm. ed. rev. vol. 1975); *Maclary v. Pleasant Hills,* Del.Ch., 109 A.2d 830, 837 (1954).

We agree that this is the rule, and that it springs from a salutary policy of "removing all temptation" thereby "extinguish[ing] all possibility of profit flowing from a breach of confidence imposed by the fiduciary relation." *Guth v. Loft, Inc.,* Del. Supr., 5 A.2d 503, 510 (1939). The general rule is almost always applicable. However, in this case the Vice Chancellor had to take the situation as he found it and fashion an appropriate remedy. He recognized that the *real* dispute was between William and Edward when he found that "both parties

were in error in that they both ignored the law relating to the management of corporations." With all of this before him, he determined that the just resolution of this "family feud" required a remedy other than that which would normally apply under corporate law. Therefore, he disregarded the existence of the corporate shell in order to prevent what he found would have been a "windfall" to William who himself had treated corporate machinery as a sham and corporate assets as his own.

Although the corporate veil may not be lightly cast aside, we find no error in what was done by the Vice Chancellor in this case. In a situation such as this, where there were no other stockholders and the rights of innocent third parties are not involved, it was not error to disregard the existence of a corporate shell for the limited purpose of fashioning an appropriate remedy. *See Harrison v. Puga,* Wash.App., 4 Wash.App. 52, 480 P.2d 247, 254 (1971); *Cerami v. Dignazio,* Pa.Super., 283 Pa.Super. 424, 424 A.2d 881, 890 (1980); 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 46 (perm. ed. rev. vol. 1974); Annot., 46 A.L.R.3d 428 § 6 (1972); Annot., 100 A.L.R.2d 385 (1965).

The decision of the Court of Chancery is AFFIRMED.