TRINITY VENTURES, INC.,           )   APPEAL NO. 89-001
       Plaintiff/Appellee,        )   CIVIL ACTION NO. 88-0686
                                  )
       vs.                        )
                                  )   OPINION
HERMAN R. GUERRERO,               )
       Defendant/Appellant.       )
_____)

Argued December 20, 1989

Counsel for Defendant/Appellant:   Douglas F. Cushnie
                                   P. O. Box 949
                                   Saipan, MP  96950

Counsel for Plaintiff/Appellee:    David A. Wiseman
                                   P. O. Box 404
                                   Saipan, MP  96950

BEFORE:  DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA,
         Justices.

BORJA, Justice:

## FACTS

On June 18, 1987, defendant/appellant Herman R. Guerrero
(hereafter "Guerrero") and plaintiff/appellee Trinity Ventures,
Inc. (hereafter "Trinity") entered into an Agreement whereby
Trinity was given the exclusive agency to sell, for a period of
ninety (90) days, two (2) parcels of property: H329, containing

42,210 square meters; and Tract No. 21698 (aka H332), containing 33,000 square meters.

On August 11, 1987, Guerrero sent a telex to Trinity, through Luis Adams, stating the following:

> LUIS ADAMS
>
> ADD NEW SENTENCE TO PARAGRAPH 5 OF GREEMENT[sic] DATED JUNE 18, 1987.
>
> IF SELLER PROCURES A BUYER DURING THE TERM OF THIS AGREEMENT, SELLER MAY CANCEL THIS AGREEMENT UPON A PAYMENT TO BROKER OF A CANCELLATION FEE OF [square symbol]40.000.00[sic]. PAYMENT OF THE CANCELLATION FEE SHALL BE MADE WITHIN 7 DAYS AFTER CLOSING OF TRANSACTION.
>      SEND REPLY CONFIRMING AGREEMENT. TRANSACTION IS EXPECTED TO BE COMPLETED WITHIN THE NEXT 30 DAYS. PETE HAS AGREED TO THE CANCELLATION FEE OF [square symbol]40,000.00.
> REPLY TO MRC TELE NO.783601 OR 783602.
>
> SENATOR HERMAN R. GUERRERO

On August 12, 1987, Trinity replied by telex with the following language:

> SENATOR HERMAN R. GUERRERO
>
> YOUR OFFER OF DLRS40,000.00 AS CANCELLATION FEE IS ACCEPTED ON BEHALF OF THE BROKERS AGREEMENT MADE BETWEEN YOU AND TRINITY VENTURES, INC. FEE IS IN FAVOR OF TRINITY VENTURES, INC. AS CONPENSATIION[sic] FOR ALL EFFORTS DONE BY THE COMPANY TO ACT AS YOUR EXCLUSIVE BROKER, FOR PERIOD JUNE 18- SEPT.17,1987.
>      MODE OF PAYMENT AS FOLLOWS:
> 1. FIRST PAYMENT OF DLRS15,000.00 BY A 15 DAY POSTDATED CHECK TO BE MAILED TODAY TO P.O. BOX 2167, SAIAPAN[sic] OR PICK UP BY MRS. ROSALINDA E. ADAMS.
> 2. SECOND PAYMENT OF DLRS25,000.00 TO BE PAID WITHIN 5 DAYS AFTER CLOSING OF THE LAND TRANSACTION.
>
> AND THAT TRINITY VENTURES, INC. OR MR. LEWIE ADAMS SHALL BE FREQUENTLY INFORMED BY YOU AS

TO THE PROGRESS OF YOUR LAND TRANSACTION, IN
ORDER FOR THE COMPANY TO MAKE FOLLOW-UP FOR
THE SECOND PAYMENT.
PLEASE REPLY BY TELEX 40048 FEBCOM PM IF AGREEABLE
TO YOU.

GOOD LUCK
LEWIE ADAMS/TRINITY VENTURES, INC.

On the same day, Guerrero responded to Trinity's telex by saying

LUIS ADAMS

TERMS ARE AGREEABLE. REQUEST RETAIN [square
symbol]15,000.00 CHECK UNTIL CLOSING. I WILL
NOTIFY OF EXACT DATE OF CLOSING.
TRANSACTION OF SALE WILL BE BY ESCROW.
THANKS,
   SENATOR HERMAN A.[sic] GUERRERO

The following day, August 13, 1987, Trinity sent Guerrero a telex saying that

PAYMENT OF U.S. DLRS 15,000.00 IS NON-NEGOTIABLE-
SORRY. YOU MADE OFFER OVER THE PHONE AND WE
AGREED AS TO THE MODE OF PAYMENT AND STATED IN
MY TELEX YESTERDAY AUG. 12/87. PLEASE FOLLOW
AGREED TERMS. CANCELLATION OF OUR JUNE 18/87
BROKER'S AGREEMENT CAN ONLY TAKE EFFECT
UMENT[sic] OF THE DLRS 15,000.00. I AM SURE YOU
KNOW THE PREDICAMENT MY BUSINESS IS IN. PLEASE
ADVISE MRS. R. ADAMS.

TRINITY VENTURES INC/LEWIE ADAMS

On August 17, 1987, Guerrero issued a check payable to Trinity in the amount of $10,000.00.[1]  In addition to the

---

[1] The record is not clear as to when the $10,000.00 was actually paid. There was evidence in the court below that it could have been paid in August, September or October, 1987. Because of our decision, it does not make any difference as to when the amount was paid.

57

issuance of the check, Guerrero also wrote a note which states that the "Remaining balance of $30,000 will be made within five days after closing of transaction."

On September 14, 1987, Guerrero and others entered into an Agreement for Purchase and Lease of Real Property with Nansay Micronesia, Inc. (hereafter "Nansay"). The agreement gave the right to Nansay to lease Tract No. 21698, plus another lot not relevant to the case, for $1.5 million, for a term of 55 years. It also gave one Ana Little the right to purchase the owners' reversionary interest for the sum of $66,810.

In addition, the document gave Nansay the option to lease H-329-R2, H-329-3, and another lot not relevant to the case, for the sum of $1.6 million. Ana Little was again given the option to purchase the reversionary interest, as to those lots, for the sum of $56,917.

On March 4, 1988, Guerrero and others, based on the September 14, 1987, agreement, executed a ground lease on Tract No. 21698 in favor of Nansay.

The parties met on April 7, 1988, and Guerrero made another payment to Trinity in the additional sum of $7,490. At the same time, the parties executed a document showing the computation made by Guerrero as to how he arrived at the figure of $7,490. This figure, plus the initial $10,000, according to Guerrero, represented the amount due Trinity as a result of the sale and lease of only Tract No. 21698. The words and figures appearing on the document after Guerrero's computations were entered by

58

Trinity. It documents Trinity's receipt of the $7,490 from Guerrero, and also shows the amount of $22,510.00 as the balance. The document is signed by Mr. Adams under the words "Received by:", and by Guerrero under the words "Acknowledged by:". Guerrero did not make any further payment thereafter.

Trinity sued Guerrero on September 26, 1988, claiming that Guerrero owed it the sum of $22,510 under the parties' cancellation agreement. Trial was held on May 5, 1989. Judgment was entered on April 18, 1989, in favor of Trinity.

## ISSUES PRESENTED

There are two (2) issues presented on this appeal:

1. Whether a valid and enforceable contract was entered into between the parties cancelling the exclusive brokerage agreement; and

2. Whether the trial court erred in concluding that the balance became due as a result of the March 4, 1988, land transaction involving Tract No. 21698.[2]

## STANDARD OF REVIEW

Both of the issues raised on appeal are mixed questions of

---

[2] Guerrero maintains that there also exists the issue of whether the statute of frauds was violated. Because the Court agrees with the trial court that a valid contract was created by the two telexes of August 12, 1987, the Court does not consider the statute of frauds to be an issue in this appeal.

fact and law. As such, the standard of review is _de novo_. _Palacios v. Trust Territory of the Pacific Islands_, 2 CR 904 (N.M.I.D.Ct. App. Div. 1986); _EDLF v. Pangelinan_, 2 CR 451 (N.M.I.D.Ct. App. Div. 1986); and _Marianas Public Land Trust v. Government NMI_, 2 CR 870 (N.M.I.D.Ct. App. Div. 1986). See, also, _United States v. McConney_, 728 F.2d 1195 (9th Cir. 1984).

## ANALYSIS

### I. Existence of a Contract

The trial court concluded that the August 12, 1987, telex from Trinity to Guerrero was a counter-offer, and that Guerrero's response telex of the same day constituted an acceptance.[3] That conclusion is correct under the facts and applicable laws.

Guerrero maintains that no contract exists cancelling the brokerage agreement because the parties never agreed to the terms of payment. He argues, on one hand, that Trinity's telex of August 12, 1987, wanted an initial payment of $15,000 by check issued the same day, but post-dated 15 days later, with the balance to be paid within five days after closing of the land transaction. On the other hand, he argues, his response stated that the $15,000 was to be retained until closing.[4]

_____

[3] The trial court listed this as findings of fact, number 5. However, whether an offer, a counter-offer, or an acceptance exists is a legal conclusion that a court must make.

[4] There is no dispute that the total amount of the consideration is $40,000.

Guerrero's argument is faulty. His response telex of August 12, 1987, did not, in fact, "state" that the $15,000 had to be retained until closing. It specifically used the word "request." A request is quite different from a statement.

Guerrero tries to explain his choice of word by saying that he should not be bound to the use of a specific word since he is not a lawyer. The court is not persuaded. Not only did he use the word "request," he also specifically stated in his telex that Trinity's "Terms are agreeable." There is no language in his telex that conditions his acceptance upon Trinity's assent to such request.

A mere request by a party to a change in the terms of an offer, or a counter-offer, is insufficient to make such a request a rejection. As stated in Restatement (Second) of Contracts, § 61

> An acceptance which requests a change or
> addition to the terms of the offer is not
> thereby invalidated unless the acceptance
> is made to depend on an assent to the
> changed or added terms.

In the absence of written law or local customary law to the contrary, the rules of the common law as expressed in the restatements of the law, approved by the American Law Institute, or as generally understood and applied in the United States if they are not so expressed, are the rules of decision in our courts. 7 CMC § 3401.

In addition, Guerrero argues that no contract exists because he did not make the initial $15,000 payment within the time

period of Trinity's counter-offer, i.e., within 15 days of August 12, 1987. He argues that all payments were made after the natural expiration of the exclusive brokerage agreement. This additional contention is also without merit.

A contract to terminate the exclusive brokerage agreement was entered into on August 12, 1987. The fact that a payment term was not adhered to strictly does not change the fact that a contract was entered into. Nor does it mean that it invalidates the contract automatically.

The parties agreed to the method of how the payments were to be made. The fact that Guerrero failed to make the first payment of $15,000 at the time that it was due, is irrelevant to the issue of whether a contract was entered into or not. Guerrero's failure to make a timely first payment might constitute grounds for breach of contract. Trinity could then have sued Guerrero on a breach of contract theory. Trinity did not do so. In fact, it accepted payment of the first instalment after the due date. Trinity, therefore, waived the breach as to the first instalment. As stated in Udevco, Inc. v. Wagner, 678 P.2d 679 (Nev. 1984)

> Waiver is usually defined as 'the voluntary and intentional relinquishment of a known right' and may be either express or implied. 5 Williston on Contracts § 678 (3d ed. 1961). Waiver can be implied from conduct such as making payments for or accepting performance which does not meet contract requirements; waiver can also be expressed verbally or in writing. 17 Am.Jur.2d Contracts §§ 393, 396 (1964).

678 P.2d at 682. Accord, Whitney Inv. Co. v. Westview Development Co., 78 Cal. Rptr. 302 (1969); and Harrison v. Puga,

480 P.2d 247 (Wash. 1971).

## II. When Balance was Due

The second and final payment under Trinity's counter-offer was to be made within 5 days after closing of the land transaction. Guerrero accepted this in his telex response.

The parties do not agree as to the meaning of the term "land transaction." Guerrero maintains that it means the sale and lease of both of the properties listed in the exclusive brokerage agreement. He contends that even if the exclusive brokerage agreement was cancelled, he is still under no duty to pay the balance at this time since only one of the properties has been leased out. Guerrero asserts that he would be under no duty to pay any amount to Trinity if both of the properties are not leased out. In contrast, Trinity's position is that the term "land transaction" means a sale and lease of any one of the two properties.

The trial court ruled in favor of Trinity and concluded that the balance became due on March 4, 1988, the date Guerrero leased one of the properties to Nansay and received $1.5 million under the lease.

The trial court was faced with the problem of interpreting the meaning of the term "land transaction." In making such an interpretation, the trial court had to be fair and reasonable under the circumstances of this case.

As stated in Restatement (Second) of Contracts § 203

> In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
> (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect....

The trial court found that the balance due did not depend on the sale or lease of both of the properties. It interpreted "land transaction" to mean _any_ land transaction involving _any_ of the two lots. This was a reasonable, lawful, and effective interpretation. It was Guerrero who sought to cancel the exclusive brokerage agreement in order to sell the properties himself. He succeeded in convincing Trinity to cancel the brokerage agreement, and has received his part of the bargain. Therefore, Trinity should also receive its part of the bargain.

The trial court was correct when it concluded that Trinity gave up a valuable right by cancelling the brokerage agreement. It was by this cancellation that Guerrero was able to consummate his transaction with Nansay.

At oral argument, Guerrero stated that at the time he requested to cancel the agreement, he did not have the money to pay Trinity. While this may be true, he did have the money by March 4, 1988. When he closed the transaction as to one lot on March 4, 1988, he received $1.5 million.

The trial court correctly concluded that the transaction which triggered the balance due was the lease agreement of March 4, 1988.

## CONCLUSION

The trial court's judgment is AFFIRMED in all respects.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Associate Justice

Jesus C. Borja
Associate Justice