[No. 10609-8-III. Division Three. March 19, 1991.]

B.C. TURNER, *Appellant,* v. CLEON H. GUNDERSON, ET AL, *Respondents.*

*James R. Dunkley,* for appellant.

*Dustin Deissner* and *VanCamp & Bennion,* for respondents.

THOMPSON, J.—B.C. Turner appeals a decision refusing to return his down payment on real property paid to Cleon H. and Virginia E. Gunderson.. The Gundersons cross–appeal, seeking a remand on the issue of their remedies and right to damages for breach of contract by Turner. We reverse and direct entry of judgment in favor of Turner and deny all relief requested by Gundersons in their cross appeal.

In April 1985, Turner and Ingram, as lessees, entered into a 10–month lease with the Gundersons, as lessors, of commercial property located in Spokane. Concurrently, Gundersons granted Turner and Ingram a 10–month option to purchase. On August 28, 1985, Turner and Ingram entered into a partnership agreement for the purpose of buying the property. The option expired by its own terms on February 1, 1986, without having been exercised. The lease continued on a month–to–month basis.

On March 8, 1986, Gundersons sent a letter to Turner and Ingram offering to renew their option to purchase the property on essentially the same terms as contained in the prior option. Acceptance of the offer was required by March 30.

On March 13, Turner, Ingram and Cleon Gunderson met to discuss the sale. An agreement was reached and a hand-written memorandum agreement prepared. The agreement was signed by Mr. Gunderson, and Turner and Ingram individually. There was no mention of the partnership. A closing was to occur on or about July 15. A down payment of $13,250 was required before closing, and all taxes were to be brought current. Turner paid one–half of the down payment at the meeting.

A closing did not occur by July 15, but on July 30, Gundersons accepted $4,125 from Ingram. Although a new date certain for closing was not established, Gundersons

continued to allow Ingram time to come up with the balance of the down payment.

On January 21, 1987, Gundersons sent a letter to Turner and Ingram entitled "Notice of Intent To Foreclose". The notice stated Ingram still owed $3,000 for the remaining down payment, and if they still wanted to purchase, $3,030 would have to be sent that day, taxes brought current, and new terms agreed to. The new terms demanded by Gundersons included a higher rate of interest, higher monthly payments and a shorter term if the property were seller–financed.

By letter dated January 20, 1987, Turner's attorney notified Ingram of the termination of his partnership with Turner. On January 26, at Gundersons' request, Turner sent Gundersons a copy of that letter. On February 22, Gundersons gave Turner notice of termination of the month–to–month lease and notice to vacate the premises. Turner vacated and returned his keys on February 27. Ingram remained.

Turner commenced a lawsuit against Gundersons for return of his down payment. Gundersons counterclaimed for the purchase price. The case proceeded to mandatory arbitration. The arbitrator awarded Turner his down payment and Gundersons appealed to superior court.

As of July 13, 1989, the time of trial, Ingram still occupied the premises. At the conclusion of the Superior Court trial, the judge orally ruled the partnership between Turner and Ingram had not been terminated and therefore Turner remained liable for rent under the lease. Additionally, the court orally ruled Gundersons were not in violation of the option agreement and, since they held the property off the market, they were entitled to retain Turner's down payment as damages.

Turner moved for reconsideration, new trial, or judgment notwithstanding the oral decision. On reconsideration, the court ruled it erred in awarding judgment against Turner for rent incurred after February 1987, because the partnership terminated in January 1987 and, since the Gundersons

had been so advised, they had no right to rely on Turner for continued payment. All other aspects of the prior oral ruling were affirmed.

Turner filed this appeal, assigning error to conclusion of law 4 and the judgment awarding Turner's down payment to Gundersons. Conclusion of law 4 provides:

4. The Gundersons did not violate their contract with Turner and Ingram and because they held their property from the market place they are entitled to retain the money paid to them by Turner.

Gundersons cross-appealed for (a) affirmance of that portion of the decision holding Gundersons did not breach their contract, and (b) a remand for determination of their remedies, damages, and attorney fees. Ingram is not a party.

Turner contends the trial court's conclusion that Gundersons did not breach their contract is inconsistent with and not supported by the findings. We agree. By letter dated March 8, 1986, Gundersons agreed to extend their option on their Spokane property to Ingram and Turner. On March 13, 1986, the option offer was accepted and exercised.

An option to purchase property is a contract wherein the owner, in return for a valuable consideration, agrees with another person that the latter shall have the privilege of buying the property within a specified time upon the terms and conditions expressed in the option. . . . [and] when supported by a consideration . . . the execution of the agreement results in a contract binding upon the optionor which may not be withdrawn by him during the time set forth therein.

*Whitworth v. Enitai Lumber Co.*, 36 Wn.2d 767, 770, 220 P.2d 328 (1950) (cited with approval in *McFerran v. Heroux,* 44 Wn.2d 631, 638, 269 P.2d 815 (1954)); *see also Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 52, 442 P.2d 950 (1968); *Duprey v. Donahoe,* 52 Wn.2d 129, 323 P.2d 903 (1958).

■ Once an option is exercised, a new contract is created. As explained in 1A A. Corbin, *Contracts* § 264, at 507–12, (1963):

Although an option contract is itself binding—that is, it is a contract before the option holder makes his choice and exercises his power—nevertheless, the exercise of the power changes the legal relations of the parties.

. . . .

. . . [The notice of intent to exercise the option is] both an acceptance of the offer and the performance of a condition precedent to [the option giver's] duty of immediate conveyance of the land. . . .

. . . .

In the bilateral contract existing after notice . . . each party now being bound by a promise, the duty of each is still a conditional duty. [The option giver's] duty of immediate conveyance by deed is conditional upon tender of [the price] by [the option holder] within a reasonable time; and [the option holder's] duty . . . is conditional upon tender of a deed of conveyance of marketable title. These acts are made conditions of the two duties, not by the express words of either party, but by usage and the prevailing judicial notions of what is just.

(Footnote omitted.) The court in *Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316, 318, 481 P.2d 17 (1971) agreed. Once an option is exercised, it becomes a new contract of "purchase and sale". *Valley Garage*, at 318. In the case at bar, the option offer was accepted and the option was exercised on March 13, 1986. The handwritten memorandum prepared and signed on that date constituted a binding bilateral contract of purchase and sale.[1]

Closing a sale after the execution of a purchase and sale contract is "the fulfillment of the obligations created by the contract." *Duprey v. Donahoe, supra* at 135. If financing by contract is to occur, a real estate contract is generally executed as part of the closing.

The March 13, 1986, contract specified a sales price of $132,500 and an interest rate of 10½ percent *if* the property were purchased by contract. *If* other financing were secured, the sales price was $125,000.

---

[1] Our conclusion is supported by finding of fact 6, which states in pertinent part: "In that meeting [*i.e.*, the March 13, 1986, meeting] it was agreed that Turner and Ingram would exercise the extended option and buy the property from the Gundersons. Turner paid over to Cleon H. Gunderson $6,625 as half of the required down payment. Closing of the sale was to occur on July 15, 1986." No error has been assigned to this finding.

■ Gundersons contend that the March 13, 1986, agreement is a real estate contract which they could forfeit or sue on for the purchase price. We disagree. A real estate contract is a financing device. The March 13 contract gave Turner and Ingram the choice of purchasing on contract or paying cash at closing through other financing. Additionally, the parties still had to have a meeting of the minds as to other terms and conditions to be incorporated in the real estate contract if financing by contract were elected. *See Duprey v. Donahoe, supra.*

The performance required of Turner and Ingram under the purchase and sale contract was to tender the down payment and pay taxes on or about July 15. The performance required of Gundersons was to proceed to close. Gundersons contend the court erred in failing to find that Gundersons were ready, willing, and able to perform. Such finding would be unsupported by the record.

The record indicates that in both the original option contract and in the March 13 contract, time was of the essence. However, by mutual agreement the time for closing was extended to a date uncertain. Finding of fact 7 states:

> Closing of the sale/purchase did not occur on July 15, 1986; however, the Gundersons continued to extend the time for closing to allow Ingram time to come up with his half of the down payment.

No error has been assigned to this finding. Turner and Ingram were entitled to participate in the establishment of a new date certain or, at a minimum, Gundersons were required to communicate a new date before unilaterally repudiating the contract.

■ In *Local 112, I.B.E.W. Bldg. Ass'n v. Tomlinson Dari–Mart, Inc.,* 30 Wn. App. 139, 143, 632 P.2d 911 (1981), the court stated:

> [W]hen an agreement provides time is of the essence, and performance has not been tendered by either party, such provision is for the benefit of both parties (unless the agreement expressly or impliedly makes the provision solely for the benefit of one of the parties), and requires the agreement of both parties to change the termination date.

A reasonable time for performance can be implied. *See Foelkner v. Perkins,* 197 Wash. 462, 85 P.2d 1095 (1938). In the case of a closing date, when the purchase and sale contract does not definitely fix a closing date, the court will allow a reasonable time for closing to occur. *Duprey v. Donahoe, supra* at 135.

█ █ A new date certain for closing had not been established by mutual agreement nor had Gundersons communicated a closing date before demanding immediate payment on January 21, 1987. This demand, coupled with a change in terms, constituted a repudiation. Such repudiation was an anticipatory breach. "An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance." *Lovric v. Dunatov,* 18 Wn. App. 274, 282, 567 P.2d 678 (1977). Unless justified, repudiation by one party will excuse performance by the injured party. *Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp.,* 7 Wn. App. 232, 499 P.2d 85, *review denied,* 81 Wn.2d 1007 (1972). The injured party is also entitled to restitution or damages. *See* 5 A. Corbin § 1104, at 558. Here, Turner sought and is entitled to receive restitution of his down payment.

Gundersons did not counterclaim for damages and no proof of damages was presented by Gundersons at trial. As to their contention that Turner's down payment should be retained as liquidated damages, there is no evidence to support a "liquidated damage" award. If in advance of a breach, parties agree to fix a sum as liquidated damages, a court will enforce the agreement if the amount fixed is a reasonable forecast of compensation for the harm caused by the breach and the harm caused is one incapable or very difficult to estimate. *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951). Gundersons also argue the trial court erred in failing to find a subsequent agreement with Turner that Turner's down payment would be treated as a nonrefundable deposit. There is insufficient evidence in the record to support such a finding.

We turn next to Gundersons' contentions that Turner and Ingram are joint obligors, and hence Turner is liable for Ingram's breach.

> At common law, a joint contract is an agreement by all of the promisors that the act promised shall be done. It is treated as the single obligation of all jointly and the individual obligation of none. For any breach of the contract, there is but one cause of action and the joint obligors are jointly liable for the damages suffered by the obligee.

*Harrison v. Puga*, 4 Wn. App. 52, 65, 480 P.2d 247 (1971) (quoting 2 S. Williston, *Contracts* § 316, at 541 (3d ed. 1959)). A joint obligor is liable for the full amount of the promised performance, not for "his fair share of it".

The March 13, 1986, contract is ambiguous.[2] It does not expressly state whether Gundersons agreed to look to Ingram for one–half of the down payment and to Turner for the other half, although it acknowledges one–half payment by Turner. However, subsequent correspondence reflects the parties' intentions. For example, in their letter of January 21, 1987, Gundersons state that Turner performed by paying "his half". He was not jointly obligated with Ingram. Again, there is no reference to partnership liability. Therefore, Turner did not fail to perform, and even though Gundersons had no duty to convey the property until performance by Ingram, Turner would still be entitled to restitution. Any action for damages by Gundersons would have to be pursued against Ingram.[3]

Gundersons also argue the partnership of Turner and Ingram is liable on the lease. The original lease was executed by Turner and Ingram individually before there was any partnership agreement. The trial court found after

---

[2] In *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990), the court rejected the theory that extrinsic evidence is admissible only if there is ambiguity in the meaning of contract language. Cases to the contrary were overruled. Therefore, even if the March 13 contract were unambiguous, extrinsic evidence was admissible to ascertain the parties' intentions.

[3] At the time Gundersons filed their appellate brief, an action was pending by Gundersons against Turner and Ingram (Spokane County cause 87-2-02913-6).

the lease expired, Turner and Ingram continued to rent the property on a month–to–month basis. In any case, the trial court's findings that the partnership between Turner and Ingram terminated in January 1987 and that notice of the termination was communicated to Gundersons are supported by substantial evidence. Gundersons have not assigned error to these findings and they are verities on appeal. *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990). A month–to–month lease is terminable upon 30 days' prior written notice. RCW 59.04-.020. The record reflects that a notice of termination of the tenancy was given to Turner and Ingram by Gundersons. Turner also gave notice of his intent to vacate and the court found that Turner did vacate on February 27, 1987. The month–to–month tenancy as to Turner thus terminated in February 1987, and Turner should have no further leasehold liability, whether or not the partnership was effectively terminated. We were advised during oral argument that Ingram continued to occupy the premises for almost 3 years after Turner vacated.

Finally, we address Turner's contention that if he prevails, he is entitled to attorney fees. Although the lease contains a fee provision, the purchase and sale contract does not. The issue raised by Turner (a return of his down payment) arises out of the purchase and sale contract, not the lease. Therefore, Turner is not entitled to attorney fees.

We reverse the trial court and direct entry of judgment in favor of Turner for $6,625 plus interest from January 21, 1987.

SHIELDS, A.C.J., and MUNSON, J., concur.

Reconsideration denied April 23, 1991.