[No. 13332-0-III.  Division Three.  July 6, 1995.]

JAMES E. RUSSELL, *Appellant*, v. R. DENNIS COOK, ET AL.,[1] *Respondents*.

---

[1]On March 21, 1994, R. Dennis Cook and Kimberly Cook were substituted as respondents in place of Neil Taylor and Rae Ann Taylor by order of our Commissioner. Because they played no role in this cause, we make no further reference to them.

*Kevan T. Montoya,* for appellant.

*Wiley, Hurst & Associates* by *Richard R. Johnson,* for respondents.

SCHULTHEIS, J. — In this consolidated action involving competing claims to residential property, the court dismissed James Russell's unlawful detainer claim against Neil and Rae Ann Taylor and ordered him to convey the property to the Taylors in specific performance of a purchase and sale agreement executed by the parties. Mr. Russell contends the court wrongly decided both issues. We affirm.

In 1985, Mr. Russell bought a house and property at 70 Knoll Road in Yakima from the Taylors. In February 1988, Mr. Russell married Shirley Thietje, and in June 1988, he gave her his full power of attorney to manage his property because he works in Alaska six to eight months of the year. On September 24, 1988, Mr. Russell and the Taylors signed a document regarding the Knoll Road property

captioned "LEASE WITH INTENT TO PURCHASE". The parties expressed an intent for the Taylors to purchase the property within one year and the Taylors agreed to lease the property for $550 per month until closing. The purchase price was set at the outstanding balance, as of closing, on an existing mortgage held by Yakima Federal Savings and Loan Association.

On April 14, 1992, the Taylors executed a real estate purchase and sale agreement which they submitted to Mr. Russell through Ms. Thietje, offering to purchase the property for $64,000 (the amount then due on the Yakima Federal mortgage). After consulting with Mr. Russell, Ms. Thietje counteroffered, setting the price at $70,000 and removing as a contingency a requirement that Mr. Russell repair the roof. The Taylors agreed and Ms. Thietje signed Mr. Russell's acceptance on May 1, 1992. Clause 1 of the agreement gave the Taylors 90 days after acceptance to make formal or written application for financing. Clause 6, regarding closing of the sale, provided in relevant part:

> WITH THE UNDERSTANDING THAT TIME IS OF THE ESSENCE FOR THIS AGREEMENT, this sale shall be closed on OR BEFORE June 14, 1992 which shall also be the termination date of this agreement, provided, however, this sale shall be closed after said date unless Seller or Purchaser gives written notice of termination after said date and before closing to the other party . . . .

The Taylors applied for a loan at Washington Mutual Savings Bank. In August 1992, after the appraisal and at Washington Mutual's insistence, they had the roof repaired at a cost of $870.75. The bank then denied the Taylors' loan application. Mr. Taylor met with Ms. Thietje and informed her of Washington Mutual's decision. He explained that he still wanted to buy the house and was pursuing other financing options. He told her he wanted more time to try to get financing and she said okay. No deadline or new closing date was mentioned or set. At the end of the short conversation, Mr. Taylor indicated they would start paying $600 per month for all the inconvenience and time it was taking to arrange financing. Ms.

Thietje accepted, and understood he was offering the extra money for the continued opportunity to buy the property.

The Taylors made regular rent payments of $550 in September and October, then made payments of $600 in November and December 1992, and January and February 1993. Although rent payments were due on the first of each month under the lease, and on the fifth by verbal agreement with Ms. Thietje, the Taylors habitually sent their payments at the end of the month. Ms. Thietje always accepted and cashed each check. The February check was again late and Mr. Russell directed his attorney, Vernon Fowler, to serve the Taylors with a three-day notice to pay rent or vacate and notice terminating tenancy. The notice, dated February 16 and delivered to the Taylors on February 19, demanded payment of $550 within three days of receipt of the notice, plus payment of $550 on March 1, and vacation of the premises by March 31. The notice further advised the Taylors that their right to purchase the property under the September 24, 1988 agreement had expired due to their failure to purchase during the first year of the agreement. The Taylors paid $600 on February 21, and $500 on March 1, noting the February payment was $50 more than demanded.

Meanwhile, Mr. Taylor called Mr. Fowler upon receipt of the three-day notice and asked for an additional two weeks to come up with the $70,000. He testified Mr. Fowler told him he had until the end of March to come up with the money. The Taylors also wrote a letter to Mr. Fowler, which they hand-delivered at his office on February 22, explaining they would like a two-week period in which to come up with a cash buy out of $70,000. Mr. Fowler refused the request by letter dated February 26, stating in part:

> Unfortunately, you have not been able to qualify for a loan so as to purchase the property pursuant to the terms that were available to you. Those terms are no longer available and, as you are aware, the Russells want to sell the property and be rid of the responsibilities for it.

The Taylors retained an attorney, who notified Mr. Fowler

by letter dated March 19 that the Taylors were exercising their purchase option and had the cash available to complete the transaction. In his March 26 response, Mr. Fowler referred to the April 1992 purchase and sale agreement, noted the Taylors had not been able to obtain financing and the sale did not close on the scheduled date of June 14, 1992. He wrote: "At that point, the parties considered the offer terminated". He then indicated if any questions remained, "this letter shall serve as further confirmation that the offer of purchase, dated April 14, 1992, is terminated".

On April 2, 1993, the parties filed separate actions in Yakima County Superior Court: Mr. Russell for eviction and restitution of the premises, and the Taylors for specific performance of the purchase agreement and/or a declaration of rights under the written agreements in question. The causes were consolidated and tried to the court on May 6, 1993. The court ruled orally in favor of the Taylors, finding their tender of performance was made before Mr. Russell effectively terminated the purchase and sale agreement and within a reasonable time after modification of the original closing deadline. The court did not rely on the original lease/purchase option, since it had either expired or was superseded by the Taylors' acceptance of the Russell/Thietje counteroffer to sell the property for $70,000. Formal findings of fact, conclusions of law and judgment were entered in May, and the court awarded the Taylors $6,110 in attorney fees and costs. Mr. Russell appeals.

■ Mr. Russell first contends the court erred as a matter of law when it determined he failed to effectively terminate the purchase/sale agreement before the Taylors gave notice they were ready and able to proceed. The court did not err. Its findings of fact are supported by the record and its conclusions of law are supported by the findings.

Closing a sale after execution of a purchase and sale contract is the fulfillment of the obligations created by the

contract. *Turner v. Gunderson*, 60 Wn. App. 696, 701, 807 P.2d 370 (citing *Duprey v. Donahoe*, 52 Wn.2d 129, 135, 323 P.2d 903 (1958)), *review denied*, 117 Wn.2d 1013 (1991). The performance required by the Taylors under the contract was to apply for financing within 90 days after May 1, 1992. They did that. They were also required to close by June 14, but absent written notice of termination by Mr. Russell, the closing date was extended automatically under the express terms of the contract. Mr. Russell and Ms. Thietje both testified they did not personally give the Taylors written notice of termination at any time after June 14. Neither of the documents written by Mr. Russell's attorney to the Taylors in February 1993 makes any reference to the purchase and sale contract, nor do they give written notice that it was being terminated. Until such notice was provided to the Taylors in the attorney's letter of March 26, the purchase and sale contract remained in effect under its own terms. By then, the Taylors had already expressed their readiness to perform.

In addition, the parties agreed verbally in August 1992 to further extend the closing date after Washington Mutual backed out, while the Taylors sought financing elsewhere. The Taylors paid consideration for the verbal extension, covering the months of November 1992 through February 1993. By accepting the Taylors' extra $50 per month, Mr. Russell was obligated to uphold his end of the bargain by keeping the closing date open at least through February. Although we need not address the enforceability of an oral agreement modifying a written purchase and sale agreement since the court based its decision on the automatic extension in the written contract, the oral agreement lends additional support to the court's equitable remedy. As the court found, it would be unfair to permit Mr. Russell to accept the Taylors' extension payments through February and at the same time tell them they had forfeited some months earlier the right to close the sale.

Thus, under both the written contract and the oral

agreement, the closing date was extended for an indefinite time. Mr. Russell could set a new date and communicate that deadline to the Taylors, or he could establish a new date with their participation and agreement, but he was not free to unilaterally declare in February that the agreement had already terminated. *Turner*, at 703. In this case as in *Turner* the parties did not discuss when the sale would close, and Ms. Thietje's unexpressed beliefs do not make *Turner* inapplicable.

Citing *Kruse v. Hemp*, 121 Wn.2d 715, 722-23, 853 P.2d 1373 (1993), Mr. Russell also contends the court could not specifically enforce the purchase and sale agreement because he and the Taylors did not set a specific closing date, which is a material and essential contract term, when they modified the agreement. *Kruse*, however, does not preclude the court's use of the remedy of specific performance in this case. First, Mr. Russell did not raise the issue below. Second, the Russell/Taylor contract contained all necessary terms for its enforcement. In *Kruse*, the parties executed a lease with an option to purchase at a future time via real estate contract, but their option contract left material terms of the real estate contract to be agreed upon in the future. The real estate contract later tendered by the optionees could not, therefore, be specifically enforced. *Kruse*, at 722-23. Here, in contrast, a specific closing date was set, with automatic extension absent written notification of termination. Third, *Kruse*, at 722-23 n.1, distinguishes between cash sales and installment purchases for purposes of specific enforcement. For obvious reasons, the terms of a contract will often be specific enough to enforce a cash sale, but not an installment purchase. Even though specific performance requires a higher standard of proof (clear and unequivocal evidence that leaves no doubt as to the terms, character and existence of the contract), *Kruse*, at 722, that standard was met in this case.

Section E of the contract provides for costs and reason-

able attorney fees to the prevailing party; therefore, we grant the Respondents' request for their costs and fees.

Affirmed.

SWEENEY, A.C.J., and MUNSON, J., concur.