IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BOB SPAIN REAL ESTATE SERVICES, INC., a Washington corporation, d/b/a LAKEMONT REAL ESTATE, | ) ) ) ) ) | No. 32006-5-III |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| WILLIAM T. COX, a single person, | ) ) | |
| Defendant, | ) ) ) | |
| ANNE M. LOPINTO, as her separate estate, | ) ) ) | |
| Appellant. | ) | |

FEARING, J. — The question on appeal is whether a divorcing wife must pay a commission to a real estate broker owed under a listing agreement signed by the wife and husband on the family home, when the broker procures a buyer, but that buyer cannot purchase the home because the divorcing husband, pursuant to court order, purchases the wife's share of the home. Based on the language of the listing agreement, the trial court answered yes and granted plaintiff broker Bob Spain Real Estate, Inc. d/b/a Lakemont Real Estate (Lakemont) summary judgment. On appeal, Anne Lopinto, the divorcing

wife, argues the listing agreement contains ambiguities that forestall a court from granting the broker summary judgment. She also argues that the defense of impossibility of performance precludes judgment against her. We affirm the trial court.

FACTS

Anne Lopinto and William Cox divorced on April 1, 2005, in Yakima County Superior Court. The court then issued a dissolution decree ordering Lopinto and Cox to sell their Yakima residence and to divide the net proceeds evenly.

On April 14, 2005, Anne Lopinto and William Cox signed an exclusive listing agreement with Lakemont to sell the Yakima residence. The first sentence of the listing agreement contains a blank space for the seller's identification, which a Lakemont real estate agent completed as "ANNE BELL / WM COX." Clerk's Papers (CP) at 139. The full sentence reads: "1. EXCLUSIVE RIGHT TO SELL: ANNE BELL / WM COX (hereinafter referred to as "Seller") hereby employs and grants LAKEMONT REAL ESTATE (Company Name, hereinafter referred to as "Listing Broker"), the exclusive and irrevocable right to sell the real property." CP at 139. Bell was the surname then used by Anne Lopinto.

Under the listing agreement, Lakemont agreed to list and advertise the Yakima residence from April 15, 2005 to October 15, 2005 in exchange for a six percent commission on the sale price of $495,000, a commission of $29,700. The opening paragraph of section 8 of the agreement declared:

> Seller agrees to pay the compensation if (1) a broker procures a buyer on the terms set forth in Paragraph 6 above, or on any other terms acceptable to Seller; or (2) Seller directly or indirectly or through any other person or entity other than Broker, during the term hereof, enters into an agreement to sell the Property.

CP at 139. Section 8(f) of the listing agreement read:

> Should a sale of the Property be pending under the terms of this Agreement, *Seller agrees* to pay Broker the above compensation if *Seller withdraws* the property from the sale or exchange or otherwise prevents performance by buyer or a Broker without the consent of that Broker.

CP at 140 (emphasis added). Section 14 of the listing agreement granted the prevailing party in litigation a right to reasonable attorney fees and costs, including fees and costs on appeal.

Lakemont found a buyer for the Yakima residence at the price of $495,000. On July 12, 2005, Anne Lopinto and William Cox signed an earnest money agreement to sell the residence to Robert Allgaier at the listed sale price. The sale was to close by August 15, 2005. Allgaier and Lopinto signed the closing documents by August 12, 2005. Cox did not. The sale did not close.

On August 17, 2005, Anne Lopinto filed a motion in the divorce court asking the court to order William Cox to obey the dissolution decree by selling the family residence. In an affidavit in support of the motion, Lopinto declared:

> The deadline has now come and gone. Hopefully the realtor can put the deal back together.
> I am fearful that I will now be subject to a lawsuit and have to defend myself for failing to abide by the terms of the agreement. The court

3

previously ordered Dr. Cox to sell the property. Please see the Decree of Dissolution. I am asking the court to enter an order shortening time to hear this matter at 1:30 on August 19, 2005 in order that this sale can be completed. I do not wish to be part of another lawsuit. I don't know why he changed his mind other than he now wishes to keep the residence. He had months to keep the residence. It was an issue in the dissolution case. He always claimed he wanted to sell it but our suspicions were that he did not intend to and made it difficult for the parties to sell the residence.

CP at 70-71.

In response to Anne Lopinto's motion to enforce the divorce decree, William Cox requested that the court allow him to pay Lopinto the $36,250.95 in net proceeds that she would have received from a sale to Allgaier and allow him to keep ownership of the residence. Cox also agreed to indemnify Lopinto from any liability relating to the Allgaier sale not closing. The trial court issued an order stating:

> Dr. Cox will be allowed to purchase the home at 7001 Englewood on the condition that he pays Anne Bell [Lopinto] for her interest in the property $36,247.79 by 8/19/05. . . . Dr. Cox will hold Anne Bell harmless from all liabilities associated with the purchase and sale agreement with Allgaier and the listing agreement with Lakemont. . . . The parties shall cooperate to sign necessary paperwork to accomplish the disposition of this house to Dr. Cox as set forth in this order.

CP at 93. Cox remitted payment to Lopinto on August 18, 2005, as required by the trial court judge. Lopinto conveyed her interest in the residence to Cox. Lakemont did not consent to any of these actions and has received no commission.

4

PROCEDURE

Lakemont sued Anne Lopinto and William Cox for breach of contract. In paragraphs 4 through 6 of the complaint, Lakemont alleged: on April 14, 2005, defendants entered into an exclusive listing agreement with Lakemont for the sale of their home; under the exclusive listing agreement, defendants agreed to pay Lakemont a commission of six percent (6%) if Lakemont procured a buyer willing and able to purchase their home for $495,000; and Lakemont obtained a willing and able buyer at the listing price. In her answer, Anne Lopinto admitted all three paragraphs. Lopinto also asserted the affirmative defense of impossibility of performance and filed a cross claim for indemnity against William Cox.

Lakemont took a default judgment against Cox. Lakemont moved for summary judgment against Anne Lopinto on both its breach of contract claim and on Lopinto's affirmative defenses. Lopinto filed a cross motion for summary judgment and moved for CR 11 sanctions against Lakemont. The trial court granted summary judgment to Lakemont, denied Lopinto's cross motion for summary judgment, and denied Lopinto's motion for CR 11 sanctions. The trial court directed entry of a final judgment against Lopinto and Cox, jointly and severally, for $29,700, plus prejudgment interest and reasonable attorney fees and costs. Lopinto obtained a default judgment against William Cox, directing him to indemnify her for the full amount of the judgment awarded to Lakemont and reimburse her for reasonable attorney fees and costs incurred.

LAW AND ANALYSIS

On appeal, Anne Lopinto contends the trial court erred when it granted

Lakemont's motion and denied her cross motion for summary judgment. Lopinto argues:

(1) she did not breach the listing agreement with Lakemont, (2) she is not jointly and

severally liable on the listing agreement with William Cox, and (3) the doctrine of

impossibility relieved her from liability for damages for breaching the listing agreement

because the divorce court order prevented her from selling the Yakima residence to

Robert Allgaier.

This court reviews a summary judgment order de novo, engaging in the same

inquiry as the trial court. *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566,

573, 304 P.3d 472 (2013). Summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law. CR 56(c); *Munich v. Skagit Emergency

Commc'n Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). An appellate court may affirm

the trial court's decision on any ground supported by the record. *Allstot v. Edwards*, 116

Wn. App. 424, 430, 65 P.3d 696 (2003).

This court construes all facts and reasonable inferences in the light most favorable

to the nonmoving party. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d

854 (2012). However, by filing cross motions for summary judgment, the parties

6

concede that there are no material issues of fact. *Tiger Oil Corp. v. Dep't of Licensing*, 88 Wn. App. 925, 930, 946 P.2d 1235 (1997), *Pleasant v. Regence BlueShield*, 181 Wn. App. 252, 261, 325 P.3d 237 (2014).

ISSUE 1: As a matter of law, did Anne Lopinto breach the listing agreement with Lakemont?

ANSWER 1: We do not address this issue, since Lopinto failed to provide argument and citations in support of the assignment of error.

Anne Lopinto contends the trial court erred by ruling she breached the listing agreement. She argues she performed her obligation by signing the closing documents required to sell the property to Allgaier. In her brief, Lopinto pens a statement of the issue pertaining to this assignment of error, but she places no argument in support of the assignment in her initial brief or reply brief.

RAP 10.3(a)(6) provides that the content of an appellate brief should contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Assignments of error not argued or further referred to in a brief are treated as abandoned by an appellant. *Talps v. Arreola*, 83 Wn.2d 655, 657, 521 P.2d 206 (1974); *State v. Wilson*, 16 Wn. App. 434, 439, 557 P.2d 18 (1976). We deem Lopinto's first assignment of error abandoned.

ISSUE 2: Is there an ambiguity in the listing agreement as to who constitutes "seller," in section 8(f) of the listing agreement, should "seller" withdraw the property

7

from sale?

ANSWER 2: We decline to answer this issue since Lakemont has an alternative ground upon which to recover the broker commission.

Anne Lopinto contends she is not liable on the listing agreement because the language regarding whether the "seller" withdrew the offer to sell was ambiguous. In forwarding this argument, Lopinto references section 8(f) of the agreement that imposes liability upon the "seller" withdrawing the residence from sale. Lopinto maintains that the language could be read to impose liability upon a divorcing spouse only if that spouse is the one who withdrew the residence from sale. Stated differently, if William Cox withdrew the home from the market, Lopinto is not the "seller" under that section. Since Lakemont drafted the listing agreement and the language is confusing, Lopinto seeks a ruling in her favor.

We decline to address this argument from Anne Lopinto because Lakemont also relies on another provision of the listing agreement to impose liability upon Lopinto. Earlier in section 8, the seller agreed to pay the broker a commission if the broker procures a buyer on the terms set forth in the listing, or on any other term acceptable to seller. Lakemont obtained a willing buyer at the listing price.

Section 8 also demanded that Anne Lopinto pay a commission if she directly or indirectly enters into an agreement to sell the property during the term of the listing. Although the divorce court forced the agreement, Lopinto sold her interest in the

8

residence to William Cox and received compensation from the sale.

ISSUE 3: Is Anne Lopinto jointly and severally liable with William Cox under the listing agreement?

ANSWER 3: Yes.

Anne Lopinto contends that the trial court erroneously adjudged her jointly liable with William Cox for the commission owed under the listing agreement. Lopinto argues that she is not liable because (1) the term "seller" in section 8(f) of the listing agreement is ambiguous regarding who must withdraw from a sale to trigger a commission being owed, and (2) the listing agreement created several liability as a matter of law, not joint liability. Lopinto claims only William Cox violated the listing agreement and, therefore, she is not liable. Since we do not base Lakemont's recovery on section 8(f) of the agreement, any ambiguity in that section is irrelevant in answering the question of Lopinto's liability.

The opening sentence of the listing agreement defines "Seller" as "ANNE BELL / WM COX." The "/" symbol is known variously as a backslash, diagonal, slant, or separatrix. Those who want to impress others call the symbol a "virgule." The parties vie as to whether a virgule operates as an "and" or an "or." We see no relevance to this disagreement. Regardless of whether we read the language "Anne Bell or William Cox" or "Anne Bell and William Cox," we hold that Anne Lopinto is liable even though she is innocent of the conduct constituting a breach.

9

The nub of the dispute is whether Anne Lopinto is jointly liable with William Cox under the listing agreement. In *Smith v. Washington Insurance Guaranty Association*, we summarized the rule for joint contractual obligations:

> At common law, a joint contract is an agreement by all of the promissors that the act promised shall be done. It is treated as the single obligation of all jointly and the individual obligation of none. For any breach of the contract, there is but one cause of action and the joint obligors are jointly liable for the damages suffered by the obligee.

77 Wn. App. 250, 258, 890 P.2d 1060 (1994) (citing *Harrison v. Puga*, 4 Wn. App. 52, 65, 480 P.2d 247 (1971). When two or more promisors agree to pay a sum of money under a contract, the amount promised is the promise of all and the promisee is entitled to a joint judgment against them, or judgments against them severally. *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 923 A.2d 971 (2007). A joint obligor is liable for the full amount of the promised performance, not for her fair share of it. *Turner v. Gunderson*, 60 Wn. App. 696, 704, 807 P.2d 370 (1991).

This court looks to the parties' intentions to determine if an agreement creates a joint obligation. *Turner v. Gunderson*, 60 Wn. App. at 704. One of the rules for determining whether a contract is joint is whether the interest of the parties in the subject matter is joint. *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 400 N.E.2d 77, 35 Ill. Dec. 940 (1980); *Wolfenbarger v. Britt*, 105 Neb. 773, 181 N.W. 932, 933 (1921). When two or more persons undertake a contractual obligation they are presumed to undertake it jointly and "words of severance" are necessary to overcome the presumption.

*Wolfenbarger v. Britt*, 181 N.W. at 933; RESTATEMENT (SECOND) OF CONTRACTS § 288 cmt. c (1981). This presumption is strengthened when the promisors undertook to accomplish together a single result. *Wolfenbarger v. Britt*, 181 N.W. at 933.

Words of severance existed in the subject contract in *Turner*, 60 Wn. App. at 704. There, this court held that two buyers were not joint obligors on a purchase and sales agreement, when the sellers sent correspondence acknowledging that one buyer had performed by paying "his half." 60 Wn. App. at 704. This court reversed a grant of summary judgment for the seller, allowing the buyer, who had paid his share of the down payment, to recover the full amount from the sellers. 60 Wn. App. at 705.

The Lakemont listing agreement contains no language severing one seller's obligations or liability from another seller's duties or responsibility. Anne Lopinto submitted no evidence to the trial court that Lakemont acknowledged her separate liability on the listing agreement.

William Cox and Anne Lopinto were joint owners of the family residence. They intended to sell together their undivided interests in the residence. Although they had divorced 13 days before signing the listing agreement, they still owned the home jointly and intended to sell the home jointly. The listing agreement did not separate the parties for purposes of performing discrete promises. The opening line of the listing agreement defined the parties as one seller. Although the dissolution decree rendered asunder the

11

marriage bonds, the two remained one for purposes of the agreement. The trial court did not err by holding Anne Lopinto liable for the breach of contract.

ISSUE 4: Does the doctrine of impossibility of performance relieve Anne Lopinto from liability for breach of contract?

ANSWER 4: No.

Anne Lopinto's final contention is that the doctrine of impossibility of performance relieved her from liability for damages for breach of the listing agreement. She argues that the divorce court's August 19, 2005 order, granting William Cox the right to purchase the property and requiring her to sign paperwork to accomplish the sale, released her of her obligation to pay Lakemont's commission for procuring a buyer.

Lopinto emphasizes *Restatement (Second) of Contracts* §§ 261 and 264. Those provisions provide, in relevant part:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 261.

> If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

12

RESTATEMENT (SECOND) OF CONTRACTS § 264 (1981). The Washington Supreme Court

adopted *Restatement* § 261. *See Cannon v. Huhndorf*, 67 Wn.2d 778, 782-83, 409 P.2d

865 (1966); *Pub. Util. Dist. (PUD) No. 1 of Lewis County v. Washington Pub. Power*

*Supply Sys.*, 104 Wn.2d 353, 363-64, 705 P.2d 1195 (1985). Washington courts have yet

to explicitly adopt *Restatement* § 264.

A case of some relevance is *Public Utility District No. 1 of Lewis County v.*

*Washington Public Power Supply System* (WPPSS). The Supreme Court held that its

invalidation of several public utility districts' agreements to participate in funding the

Supply System to oversee the construction of nuclear power plants in Washington, *see*

*Chem. Bank v. Wash. Pub. Power Supply Sys.*, 99 Wn.2d 772, 798-99, 666 P.2d 329

(1983), did not prevent the Supply System from paying bridge loans it acquired from

those counties in attempting to construct the plants. *PUD District No. 1*, 104 Wn.2d at

364. The court found that the utility districts' agreements to participate "did not

constitute a basic assumption of the loan contracts." 104 Wn.2d at 362. The court

continued: "[A]lthough our invalidation of the Participants' Agreements may have made

repayment of the loans more difficult, WPPSS' current financial inability to perform does

not amount to impossibility or impracticability of performance so as to excuse WPPSS

from its obligations on the loan agreements." 104 Wn.2d at 364.

Like the Supreme Court's decision invalidating the Supply System's participation

agreements in *PUD District No. 1*, the divorce court's order allowing William Cox to

purchase the property does not prevent Anne Lopinto from performing her obligations under the listing agreement with Lakemont. The order did not preclude Cox or her from paying the broker commission. The fact that a contract becomes more difficult or expensive than originally anticipated does not justify setting it aside. *PUD Dist. No. 1*, 104 Wn.2d at 364; *Liner v. Armstrong Homes of Bremerton, Inc.*, 19 Wn. App. 921, 926, 579 P.2d 367 (1978). Although she asserts that her only obligations under the listing agreement were to cooperate with the sale and closing, the language of the contract reads otherwise.

Even if we were to adopt *Restatement (Second) of Contracts* § 264 (1981), the comments to that section instruct against applying it in our circumstances. "The regulation or order must directly affect a party's performance in such a way that it is impracticable for him both to comply with the regulation or order and to perform." RESTATEMENT (SECOND) OF CONTRACTS § 264, cmt. b (1981). Anne Lopinto could comply with the trial court's order to cooperate with her husband's purchase of the property and perform her obligation under the listing agreement to pay Lakemont its commission. Accordingly, the trial court did not err in rejecting Lopinto's defense of impossibility of performance.

We acknowledge that Anne Lopinto's former husband's tardy demand to retain the family home and the trial court's order compelling the transfer of Lopinto's share to her former husband inconvenienced and injured Lopinto. Nevertheless, the injury is

14

through no fault of Lakemont. To the contrary, Lakemont performed services that led to the procurement of a willing and able buyer at the listed price of the residence. Lopinto received from Cox an amount similar to the sale proceeds she would have received if the sale to Robert Allgaier closed. Unlike before the divorce court order, Lopinto now has a right to indemnity from Cox for any commission she pays to Lakemont. In the end, her financial position may have improved.

ISSUE 5: Is Lakemont entitled to an award of reasonable attorney fees and costs on appeal?

ANSWER 5: Yes.

RAP 18.1(a) permits a party to recover attorney fees on appeal if an applicable law grants the party that right, and the party includes a request for fees in its brief. A contractual provision for an award of attorney fees supports an award of attorney fees on appeal. *Thompson v. Lennox*, 151 Wn. App. 479, 491, 212 P.3d 597 (2009). A party must prevail on the merits before being considered a prevailing party. *Ryan v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 454, 476, 287 P.3d 629 (2012). A plaintiff becomes a prevailing party if the plaintiff succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Parmelee v. O'Neel*, 168 Wn.2d 515, 522, 229 P.3d 723 (2010).

The Lakemont listing agreement provides "the prevailing party shall be entitled to reasonable attorney fees and costs, including those for appeals." CP at 140. Therefore,

15

No. 32006-5-III
*Bob Spain Real Estate v. Cox*

Lakemont requests attorney fees and costs on appeal. Lakemont is the prevailing party and entitled to an award of reasonable fees and costs.

## CONCLUSION

We affirm the summary judgment in favor of Lakemont and against Anne Lopinto. We award Lakemont reasonable attorney fees and costs incurred in this court against Lopinto.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

16