**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| DEREK EDMONDS AND JUILING EDMONDS, individuals, | No. 83995-1-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| APEX TTF BELLEVUE, LLC, a Washington Limited Liability Company, | |
| Respondent. | |

MANN, J. — This appeal arises from a lease agreement with an option to purchase for a residential property. The lessees, Derek and Juiling Edmonds, sued the property owner, Apex TTF Bellevue, LLC (Apex) for breach of contract, specific performance, and damages. The Edmonds appeal the trial court's summary judgment dismissal of the claims. We affirm.

I

A

In December 2018, the Edmonds leased residential property in Bellevue from Apex (the property). The Edmonds and Apex entered into a lease and rental agreement

(lease) with a lease term of January 1, 2019, to March 31, 2020.  The lease required the Edmonds to pay $7,500 per month for the lease term.

The parties also entered an addendum to the lease (addendum).  The addendum granted the Edmonds an option to purchase the property on specified terms (option).  The option allowed the Edmonds to purchase the property by the end of the lease term for $2,475,000 after giving 60 days' written notice to Apex.  The option provided for credit against the purchase price for rent paid as well as certain improvements done by the Edmonds.  If the Edmonds exercised the option, they were required to close the purchase within 60 days, but not later than the expiration of the lease term.

The addendum also allowed the Edmonds to extend the lease term for an additional year, through March 31, 2021.  During the extended lease term, Apex had the right to market the property for sale, subject to a right of first refusal granted to the Edmonds.  In January 2020, the Edmonds extended the lease for an additional year.  Consistent with the terms of the addendum, when the lease term was extended, the purchase price for the option increased to $2,600,000.

In October 2020, the Edmonds e-mailed Apex's property manager, Ben Williams, informing him that they were submitting mortgage applications, and asked if Williams could prepare a purchase and sale agreement under the terms of the option.

In November 2020, the Edmonds e-mailed Williams and stated that the option enables them to purchase the property at the previously agreed upon price until the expiration of the lease term on April 1, 2021.  The Edmonds attached a purchase and sale agreement (November PSA) and stated that they were looking to finance their purchase.  During their discussions, Williams let the Edmonds know that Apex had

contacted Doug Perry, at Wallick & Volk, and let him know that the Edmonds were looking for preapproval. When Williams e-mailed the Edmonds at the end of December 2020 to check on the progress of financing, the Edmonds stated that they were still waiting to hear back on the mortgage application, but that they "will be exercising the option to purchase within the next 30 days."

On January 29, 2021, the Edmonds e-mailed Williams stating that they were providing formal notice that they were exercising the option. The Edmonds asserted that "[a]ccording to the agreement, the parties are to enter into a Purchase and Sale Agreement with closing to take place within 60 days, prior to April 1, 2021." In response, on February 8, 2021, Williams explained by e-mail that Apex viewed the earlier November PSA as a written notice to exercise the option, and because 60 days had passed since the submission of the offer, Apex considered the option to have expired because the purchase had not closed. Nevertheless, Apex expressed its willingness to continue discussing the option with the Edmonds and let them know that Apex's preference had always been to amicably sell the property to the Edmonds.

On or about February 10, 2021, Apex listed the property for sale in the event that the Edmonds did not purchase it by the end of the lease term. Meanwhile, the Edmonds continued to work with Wallick & Volk to secure financing as late as March 3, 2021. On February 12, 2021, Apex received an offer from a third party to purchase the property, but it was contingent upon the Edmonds' failure to complete the purchase by March 31, 2021.

On February 15, 2021, counsel for Apex wrote to the Edmonds and, consistent with the February 8, 2021 e-mail, informed the Edmonds that it considered their ability

to exercise the option expired on January 15, 2021, because they had not closed within 60 days of their November 16, 2020 notice of intent to exercise the option. The letter also notified the Edmonds that it had received a bona fide offer from a third party to purchase the property for $2,700,000 including an earnest money deposit of $81,000. The letter informed the Edmonds that they had five business days to review the offer and decide whether to exercise their right of first refusal under the addendum. The next day, the Edmonds rejected the assertion that their November 16, 2020 offer was an exercise of the option and argued that the option did not expire.

On February 18, 2021, counsel for Apex left a voicemail with the Edmonds' counsel, stating that Apex would honor the option to purchase. The phone call was followed by an e-mail the next day confirming that Apex would honor the option to purchase. On February 22, 2021, Apex's counsel e-mailed the Edmonds' counsel a proposed purchase and sale agreement, which was substantially consistent with the terms of the option plus a $100,000 earnest money requirement. Apex also attached a 60-day Notice of Intent to Sell Property (notice) and explained that such a notice served as a precaution to allow Apex to proceed with selling the property to a third party if the Edmonds could not close their purchase by March 31, 2021. The next day, the Edmonds requested several revisions to the proposed purchase and sale agreement, including more time to close. Apex provided a revised purchase and sale agreement (February PSA) that removed the earnest money requirement and made other changes requested by the Edmonds—except for the change in closing date. While Apex accepted changes that were consistent with the option, it pointed out that closing must

occur within 60 days after the Edmonds exercise the option, but "not later than March 31, 2021."

On February 24, 2021, the Edmonds wrote Apex explaining that because Apex had rejected the option to purchase until February 22, the Edmonds were unable to seek funding and therefore the closing date should be extended to April 23, 2021—beyond the term of the lease. Apex responded, reminding the Edmonds that under the terms of the option, closing was to occur within 60 days of exercising the option "but not later than the expiration of the lease term on March 31, 2021."

On February 26, 2021, the Edmonds sent another letter to Apex stating that they were entitled to close the purchase by April 26, 2021. In response, Apex reiterated that the remaining terms that the Edmonds insisted be included in the February PSA differed from the option, but that it was willing to close by March 31, 2021. On March 6, 2021, Apex opened title with First American Title as required by the option. In response, the Edmonds' counsel informed Apex's counsel that they had filed a lawsuit.[1] On March 24, 2021, Apex wrote to the Edmonds to let them know that it was working to clear a defect found on the title. In response, the Edmonds' counsel stated that the Edmonds were prepared to close, provided Apex accepts responsibility for damages it has caused. Apex responded that the only disputed term was the closing date and explained that the option specified that closing must occur no later than March 31, 2021. On March 30, Apex e-mailed the Edmonds and reiterated that Apex remained prepared to sell the property to the Edmonds under the option.

---

[1] On March 24, 2021, the Edmonds recorded a lis pendens against the property at the King County Recorder's Office, but Apex successfully quashed the lis pendens following the dismissal of the Edmonds' claim for breach of contract and specific performance.

The extended lease term expired on March 31, 2021. The Edmonds failed to sign the February PSA or deposit the required funds into escrow by this date although both actions were requirements of closing. Despite the expiration of the lease, the Edmonds failed to vacate the property and made no further rental payments.

On September 9, 2021, Apex received an unsolicited offer to purchase the property for $2,925,000, but it could not accept the offer due to the pending litigation and the offer expired. On October 26, 2021, Apex received a renewed offer from the same buyer. The Edmonds exercised their right of first refusal and matched the $2,925,000 offer. On December 8, 2021, the Edmonds closed their purchase of the property.

B

The Edmonds sued Apex asserting nine causes of action, including breach of contract and specific performance. In response, Apex asserted three counterclaims, including breach of contract related to the lease and the option.

On August 31, 2021, the trial court granted Apex's motion for partial summary judgment and dismissed the Edmonds' claims with prejudice. The trial court concluded that the Edmonds were not entitled to specific performance because they did not perform their obligations under the addendum by failing to execute the February PSA and tender the purchase price. The trial court also concluded that Apex did not breach the addendum because Apex's February 15, 2021 notice to the Edmonds of the third-party offer and their right of first refusal did not anticipatorily repudiate the option. And even if the notice was an anticipatory repudiation of the option, the trial court concluded

that the Edmonds did not act in reliance on the notice and that Apex quickly withdrew any repudiation.

On October 26, 2021, the trial court granted Apex's second motion for summary judgment on its counterclaim for breach of contract. The trial court determined that the Edmonds breached the option by failing to close their purchase by March 31, 2021 and breached the lease by failing to vacate the property.

Apex then moved to liquidate its damages, seeking damages equal to the amount of its monthly mortgage and landscaping payments from April 1, 2021, to December 8, 2021, the time during which the Edmonds refused to vacate the property and failed to make rental payments.[2] The trial court denied Apex's motion without prejudice. The trial court then denied the Edmonds' motion for partial summary judgment on the same issue. In March 2022, the parties proceeded to trial before a jury solely on the issue of damages. The jury found that Apex had been damaged by the Edmonds in the amount of $55,295.

The Edmonds appeal.

II

The Edmonds argue that the trial court erred in granting summary judgment for Apex on the breach of contract and specific performance claims because Apex repudiated the contract and thus was the party in breach. We disagree.

We review summary judgment orders de novo, considering the evidence and reasonable inferences in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is proper

---

[2] In January 2022, the parties agreed to voluntarily dismiss their remaining claims.

when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Keck, 184 Wn.2d at 370; CR 56(c). We "must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party, and the motion should be granted if a reasonable person could reach only one conclusion." Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 638 P.3d 498 (2017).

Repudiation occurs when one party indicates that it will not perform its contractual obligations. CKP, Inc. v. GRS Constr. Co., 63 Wn. App. 601, 620, 821 P.2d 63 (1991). While the question of anticipatory repudiation is one of fact, it can be decided on summary judgment if, taking all evidence in the light most favorable to the nonmoving party, reasonable minds can reach only one conclusion. Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 321, 111 P.3d 866 (2005). Anticipatory repudiation must be a clear and positive statement or action that expresses an intention not to perform the contract. Alaska Pac. Trading Co. v. Eagon Forest Prods., Inc., 85 Wn. App. 354, 365, 993 P.2d 417 (1997); Turner v. Gunderson, 60 Wn. App. 696, 703, 807 P.2d 370 (1991).

But repudiation does not itself terminate a contract. Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp., 7 Wn. App. 232, 234, 499 P.2d 85 (1972). A repudiating party, who is not otherwise in default, may withdraw its repudiation if the other party has not acted in reliance on the repudiation and there has been no material change in position in reliance upon the repudiation. Hemisphere Loggers, 7 Wn. App. at 234. As a result, we need to answer three questions: (1) did Apex repudiate the option, (2) if so, was the repudiation withdrawn, and (3) if so, did the Edmonds act in

reliance on the repudiation or otherwise materially change their position based on the repudiation.

A

The Edmonds argue that Apex expressly repudiated the contract on February 8, 2021, when Apex's agent e-mailed the Edmonds that "the tenant's Option rights may be viewed as now being defunct and expired." We agree.

Apex responds that it did not expressly repudiate the contract because it considered the Edmonds' submission of the November PSA as their written notice to exercise the option. Because Derek Edmonds sent the November PSA on November 16, 2020, and had 60 days to close after his exercise of the option, Apex viewed the option to have expired.

The February 8, 2021 e-mail states that the Edmonds' option rights are defunct and expired. More importantly, the February 15, 2021 letter expressly states that the Edmonds' option to purchase had expired and Apex was instead giving the Edmonds a right of first refusal to the third-party offer. Viewed in the light most favorable to the Edmonds, we conclude that Apex's February 15, 2021 letter enclosing the third-party offer was an express repudiation of the option to purchase.

B

Apex argues that any repudiation was withdrawn by February 19, 2021—four days after the written repudiation. We agree.

On February 19, 2021, Apex's counsel e-mailed the Edmonds' counsel stating that "Apex will honor the Option to Purchase. It will have a draft Purchase and Sale Agreement for Mr. Edmonds review on Monday."

On February 22, 2021, Apex sent the Edmonds a signed PSA with the original purchase price of $2,600,000. And after the Edmonds called Apex's attention to several errors, including the addition of a $100,000 earnest money deposit, Apex responded that same day with the revised February PSA removing the earnest money and giving proper credit for rental payments made. While Apex did not change the closing date as demanded by the Edmonds, it used the original closing date from the option, March 31, 2021, because the addendum specifies that closing must occur "not later than the expiration of the term of the lease." Thus, the record shows that Apex fully retracted the repudiation by February 23, 2021.

Further, Apex opened title with First American Title, informed the Edmonds that it was working to clear a defect found on the title, and reiterated that it remained prepared to sell the property to the Edmonds. These statements and actions are a clear indication of Apex's willingness to perform its side of the contract.

Even though Apex had fully retracted its repudiation, the Edmonds failed to take the necessary steps to close the purchase of the property by not executing the February PSA and tendering the purchase price.

C

The Edmonds argue that Apex could not withdraw its repudiation because they relied on the repudiation and stopped trying to procure the purchase money by selling their securities, other property, or otherwise liquidating their accounts. Because they changed their position based on the repudiation, the Edmonds assert that any attempted retraction by Apex was invalid. We disagree.

The Edmonds did not rely on the repudiation or materially change their positions. When Derek Edmonds sent the November PSA to Apex, he also specified that the Edmonds were looking to finance their purchase. Apex provided a referral to the Bellevue branch of Wallick & Volk. When Williams inquired on behalf of Apex near the end of 2020 as to whether the Edmonds had been able to secure financing, Derek Edmonds responded that he was still waiting for news from Doug Perry at Wallick & Volk, about the mortgage application. Thus, the Edmonds had been looking to finance their purchase since November 2020, but they could not secure financing as late as March 3, 2021. Although the Edmonds claim that they stopped trying to procure the purchase money because Apex repudiated, the Edmonds failed to provide any evidence reflecting that they acted in reliance on the repudiation.

In addition, on February 18, 2021, counsel for the Edmonds wrote to counsel for Apex demanding that Apex honor the original option to purchase. The letter does not say that the Edmonds in any way changed their position based on Apex's February 15 repudiation.

Because there is no evidence that the Edmonds relied on the repudiation, Apex could, and did, withdraw its repudiation. Thus, even taking all evidence in the light most favorable to the Edmonds, there is no genuine issue of material fact as to whether Apex withdrew its repudiation and whether the Edmonds materially changed their position based on the repudiation. The trial court did not err by granting summary judgment and dismissing claims for breach of contract and specific performance.

III

The Edmonds also argue that the trial court erred in denying summary judgment on damages. The Edmonds argue that because Apex ultimately received $2,925,000—$325,000 more than the originally bargained for price of $2,600,000—it sustained no damages. We disagree.

An order denying summary judgment, based on the presence of material, disputed facts, will not be reviewed when raised after a trial on the merits. Johnson v. Rothstein, 52 Wn. App. 303, 306, 759 P.2d 471 (1988).

Here, the Edmonds cannot appeal the order denying summary judgment on damages simply because Apex sustained "no damages." Contrary to what the Edmonds claim, Apex sustained damages when the Edmonds failed to vacate the property or pay rent after the lease expired—between April 1, 2021, and December 8, 2021. More importantly, after a trial on the merits, the jury found that Apex had been damaged by the Edmonds in the amount of $55,295. Thus, given that a jury determined the factual issues in dispute, the Edmonds cannot appeal the trial court's order denying summary judgment regarding damages.

IV

Apex requests attorney fees and costs on appeal under RAP 18.1 and the lease. RAP 18.1 provides that this court may award reasonable attorney fees on appeal if applicable law grants the party the right to such fees. A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal. W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985).

The lease provides the following provision regarding attorney fees:

ATTORNEYS FEES / VENUE AND JURISDICTION: As provided by law and except as otherwise prohibited, the prevailing party shall be entitled to recover its reasonable attorneys fees and court costs incurred in the event any action, suit or proceeding commenced to enforce the terms of this Agreement.

As the prevailing party on appeal, upon compliance with RAP 18.1, Apex is entitled to reasonable attorney fees and costs on appeal.

We affirm.

_Mann, J._

WE CONCUR:

_Feldman, J._                    _Birk, J._